666 A.2d 1375

IN THE MATTER OF REGISTRANT C.A.: APPLICATION
FOR JUDICIAL REVIEW OF NOTIFICATION AND
TIER DESIGNATION.[1]

Superior Court of New Jersey
Appellate Division

Argued November 15, 1995—Decided November 20, 1995.

---

[1] The initials used in the caption are fictitious. This court has for the purposes of confidentiality, refrained from identifying the names of those involved as well as the attorneys, Municipality and County in question. Initials of victims and witnesses are also fictitious.

Before Judges SHEBELL, LONG and MUIR, Jr.

The opinion of the court was delivered by

LONG, P.J.A.D.

Having pled guilty to the fourth degree sexual assault of an acquaintance in 1988, on March 19, 1991, the registrant was sentenced to a two-year probationary term along with community service. In 1993, the registrant entered a plea of guilty to third degree aggravated criminal sexual contact (*N.J.S.A.* 2C:14–3a) and was sentenced to a five-year custodial term with two and one-half years of parole ineligibility. Pursuant to the plea bargain, another indictment charged the registrant with sexual assault, robbery and several weapons offenses involving the victim A.Z., was dismissed.

The registrant was scheduled to be released from jail on October 18, 1995. On or about October 6, 1995, he was personally served with a letter of notification that stated: "You will be classified in TIER 3." The notice informed the registrant that his classification was based on the Sex Offender Risk Assessment Scale attached to the notice. The scale score which was 83, placed the registrant in the high risk category. The registrant applied for judicial review of the sex offender notification tier designation. Among various claims in his application, the registrant contended

that the scoring was incorrect because he never used a weapon and because he was acquainted with his victims.

A conference was scheduled before the trial judge on November 3, 1995. The registrant argued that the sexual assault on A.Z., which was dismissed as a part of the 1993 plea bargain, should not have been considered at all in the scoring. If successful on this claim, the registrant's score would have been reduced in several particulars. Criteria number one—the degree of force score—would be lowered from 15 to 5 because A.Z.'s was the only case involving a knife. The score on criteria number five would also be reduced from 9 to 6 because the registrant would only have had two victims, not three. The registrant also argued that the score on criteria number four (victim selection) would be reduced from nine to three because A.Z. was the only stranger victim and would be eliminated.[2]

If it was improper to consider the sexual assault on A.Z., the reduction of the degree of force score from 15 to 5 would automatically reduce the overall score to 73 and drop the registrant back to a Tier 2 classification (37–73) with which the registrant would be satisfied. A second issue emerges from the question of the propriety of considering the dismissed charges; assuming they may be considered, is there sufficient documentation that the registrant used a knife?

The trial judge rejected the registrant's request for an evidentiary hearing which had been based on the registrant's argument that A.Z.'s statements were inconsistent and problematic from a credibility point of view. The judge went on:

> Thank you, counsel. The Court believes that upon the information presented, and based upon my ruling of not calling [A.Z.] to the stand, a decision can appropriately be made at this time. I don't think there is anything that would be accomplished at a hearing that I don't have in front of me. I am satisfied that the

---

[2] The registrant raised two other claims which are not relevant here. One, involving criteria seven was later conceded by him. The other challenged the score on criteria 9. Because this could not have changed the scoring outcomes, the judge did not rule on it.

discovery presented by the prosecutor, specifically now in this particular area under number one, ML–70 through ML–112, provides the Court with sufficient information to make the decision. First I will note that it is not necessary, in this Court's opinion, to consider action an offense as far as section one of the Sex Offender's Risk Assessment Scale is concerned. In other words, I think that the Court can, if it finds to be appropriate, find that an offense occurred even though there is no conviction. As to whether the offense occurred here and whether or not there was a degree of force under number one of the seriousness of the offense, I have reviewed the discovery presented. I note on ML–70 at the bottom of the page, it is stated, we were detailed to [A. Street] and [B. Avenue] on a rape and stolen auto. Upon arrival, we met [A.Z.] crying hysterically that she had just been raped and that her auto was on [C. Lane] halfway down the alley. As we transported—I can't make the word out—to look for her auto, she stated at approximately twenty-one hundred hours, she was in her—I can't read that word—auto.

PROSECUTOR: I believe that is "listed".

THE COURT: Stopped at a red light on [D. Avenue] and [E. Street] facing north. At that time, [C.A.] opened her unlocked passenger's door, got in, pulled out a small hunting type knife, held it in front of him and told her she was going to take him where he wanted to go, and so forth. That is the report of [M.C.]. The report was also read into the record earlier by [Sergeant F.]. It is at Page ML–73. The writing is not that clear, but here it says, at approximately twenty-one hundred and forty hours on June 16th, 1991, responded to [C. Lane] on a report of a sexual assault. Upon arrival, I briefly interviewed the victim, [A.Z.], who advised that she had been sexually assaulted in her auto, and it was parked nearby after she was kidnaped at knife-point from [Z. Township], from a [Z. Township location.] At Page ML–78, and this was recently read by the prosecutor. I interviewed the victim, and during the interview, I observed she was extremely emotionally upset and did not exhibit any visible injuries due to her assault. She related the following information regarding the incident under investigation. She had stopped her automobile at the traffic signal at the corner of [E. Street] and [D. Avenue] when an unknown black male entered her vehicle through the unlocked front passenger door and placed a knife to her throat and directed her to ride to an unknown location where the individual forcibly had sexual intercourse with her inside her auto.

So what the Court has been presented with was three separate statements to three separate persons, the last one being [Detective L.S.], that while she was in an emotional state, she gave information each of the three times that a knife was used, so I determine that a knife was used in that incident. I acknowledge counsel's argument that it was not used. She did not say it was used, presented to her during the actual assault, sexual assault. I am satisfied, under the scenarios presented by [A.Z.] that under seriousness of the offense, number one, degree of force, that the prosecutor appropriately found it to be a three; that is use of a weapon.

█ We hold that the details of a sexual offense, which is not the subject of a conviction, may be considered in the risk assess-

ment scale calculus. The judge may rely on documentation he or she considers relevant and trustworthy in making a determination. *Sex Offender Risk Assessment Scale Manual,* P.5, (9/14/95). This may include, but is not limited to, criminal complaints not the subject of a conviction but which are supported by credible evidence, victim statements admissions by the registrant, police reports, medical, psychological or psychiatric reports, pre-sentencing reports, and Department of Corrections discharge summaries." *Ibid.*

This is not a criminal case and, therefore, the constitutional right of confrontation is not implicated. The test of admissibility should be the reliability under the totality of the circumstances of the hearsay statements being considered. *Cf. Idaho v. Wright,* 497 *U.S.* 805, 819, 110 *S.Ct.* 3139, 3148, 111 *L.Ed.*2d 638, 654–55 (1990).

■ The State has the burden of going forward and establishing a prima facie case justifying the proposed level and manner of notification. This was done through the submission of detailed documentation as to the registrant's prior sexual offenses addressing relevant criteria on the scale. Included in this documentation and the determination of the ultimate score, was the full background of the offense involving A.Z. This included her various statements to the authorities and to personnel at the hospital where she was admitted after the assault for depression and post-traumatic stress syndrome. These statements were found to be consistent as to the occurrence of the sexual assault and the use of a knife by the registrant. As the trial judge stated, nothing on the face of the documentary evidence suggested inconsistencies or credibility problems of A.Z. Thus, he concluded that the A.Z. evidence was a proper part of the State's prima facie case.

In attempting to persuade the judge that the tier classification and manner of notification do not conform to the laws and the guidelines, which is the registrant's burden, the registrant's attorney pointed to his client's equally consistent statements that he never used a knife in his dealings with A.Z.; the fact that no

weapon was recovered, and that his prior criminal history was entirely non-violent and never involved the use of a weapon. The use of the weapon thus is at the heart of the case because the 10 point differential is the difference between Tier 3 and Tier 2 status. It is with respect to this issue that the registrant claims entitlement to an evidentiary hearing.

The issue he has raised is meritorious. While *Doe v. Poritz*, 142 *N.J.* 1, 662 *A.2d* 367 (1995) teaches that the manner of the hearing including the need for witnesses and cross examination is to be controlled by the judge, *Id.*, 142 *N.J.* at 131, 662 *A.2d* 367, that control must not be exercised so as to deny the registrant an opportunity to be heard on any relevant material factual matter in dispute. The opinion in *Doe* generally posits the use of documentary as opposed to testimonial evidence in tier classification cases. This rule makes sense from a due process perspective in the vast majority of cases in which a plea has been entered or a jury verdict of guilt announced. In such cases, the basics of the offense (i.e. use of force, weapons, relationship to the victim, circumstances surrounding it) have been acknowledged or adjudicated. However, in those cases where the State seeks to use evidence of a sexual offense not the subject of a conviction in tabulating the Sex Offender Risk Assessment Score, the documentary evidence may be subject to question because of contrary assertions made by either the registrant or others. It is for this reason that the Registration and Community Notification Laws Bench Manual specifically states that the "trial judge should allow live testimony" when it is "reasonably necessary to resolve an issue that could affect the court's disposition of the matter." That is the situation here.

Here, a critical fact is in issue which affects the tier classification. A.Z. said she was kidnapped through the use of a knife. The registrant's attorney pointed out that the registrant has continually denied that a knife was used and claimed that the

incident was a consensual sex for drugs transaction.[3]  Only the
victim and the registrant were privy to the details of the crime.
Their statements as to the knife are in direct conflict.  This
conflict can only be resolved at a hearing where both sides may
present such evidence, documentary and live, that is material to
the issues.  The only caveat to this rule is that neither side may
serve process on the victim or seek to compel testimony from the
victim without leave of court, which shall be granted only upon a
clear and convincing demonstration of a compelling need for that
witnesses' testimony.  Witnesses who are produced are to be
judged, as all witnesses, by their demeanor, the reasonableness of
the stories they relate and the external circumstances which affect
the believability of their testimony.  After considering all of the
relevant evidence, live and documentary, it is incumbent upon the
judge to make a factual finding as to what actually occurred, and
to state the reasons for so finding.

■ This is not to suggest that every facially unbelievable and
bizarre story advanced by a registrant as a basis for an evidentia-
ry hearing will compel such a hearing.  A judge might well
conclude that a registrant's unsubstantiated claim that an elderly
grandmother or a nun was engaged in a consensual sex for drugs
transaction is unworthy of belief.  Under those circumstances, no
further inquiry would be required.  That is not the case here.
Here, A.Z., a middle class resident of the suburbs, was driving in a
drug area late at night with her passenger door unlocked when the
assault allegedly occurred.  In her hospital records she verified
continued drug use from the age of 16 as well as the fact that she
had experienced purchasing drugs "on the street."  She also
refused the prosecutor's offer of a polygraph exam.  Thus, the
story the registrant told about a drug transaction with A.Z. was
simply not so farfetched on its face and on the record, as to
compel the conclusion that an evidentiary hearing was unwarrant-

---

[3] We recommend that in the future the registrant's factual contentions be
sworn to in a certification to be presented at the conference.

ed. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995).

We are not unmindful of the difficulties involved in calling a victim witness to participate in a tier classification hearing. Nevertheless, principles of fundamental fairness require an evidentiary hearing in this case.

Reversed and remanded.