285 N.J. Super. 554 (1995)
667 A.2d 1077
IN THE MATTER OF REGISTRANT E.A.: APPLICATION FOR JUDICIAL REVIEW OF NOTIFICATION AND TIER DESIGNATION.[1]
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1995.
Decided December 1, 1995.
*556 Before SHEBELL, LONG and MUIR, JJ.
The opinion of the court was delivered by MUIR, JR., J.A.D.
This appeal stems from the implementation of the Registration and Community Notification Laws (RCNL), N.J.S.A. 2C:7-1 to -11, and the judicial review process required by Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995), for the evaluation of a prosecutor's RCNL risk of reoffense assessment and extent of notification determinations. E.A., a convicted sex offender subject to RCNL provisions, appeals that part of a trial court order that approved the prosecutor's scope of public notification. The challenges raised are (1) to the notification of proposed community organizations because, to date, the organizations have not registered as required by the Attorney General's Guidelines, preventing E.A. from evaluating whether the organizations are entitled to notification; and (2) to the geographical scope of notification on grounds it is arbitrarily conceived, void of expert input, and therefore contrary to the Attorney General's Guidelines.
*557 We affirm the trial court order to the extent it approves (1) notification to all private residences within one mile of E.A.'s residence and within one-half mile of E.A.'s work place; and (2) notification to all public and private schools as well as operating licensed day care centers within two miles of E.A.'s residence or work place. As to the remaining scope of notification determination concerning notice to yet unregistered community organizations, we remand to allow the prosecutor to present proper proof consonant with this opinion and to allow for resolution by the trial court based on the proof submitted.

I.
E.A.'s criminal conduct makes him subject to the RCNL. As an adult, he has been convicted of sex offenses against 12-, 13-, and 14-year-old boys. He recently was released from the Adult Diagnostic and Treatment Center, see N.J.S.A. 2C:47-3, after serving the maximum time on sexual assault convictions. The prosecutor, pursuant to the RCNL, notified E.A. he had been classified as a high risk of reoffense (Tier Three) registrant. At the same time in a Scope of Notification Form, the prosecutor advised E.A. of the intent to notify public and private schools, licensed day care centers, registered community organizations, and members of the public the prosecutor deemed would be likely to encounter E.A. See N.J.S.A. 2C:7-8c(3).
E.A. sought judicial review. See Doe v. Poritz, supra, 142 N.J. at 30-31, 662 A.2d 367. While that review related to both the Tier Three classification and the scope of notification, we are concerned with only the latter because E.A. does not challenge the classification.
The prosecutor established the scope of notification, in a geographic sense, in terms of distances keyed to density of population. Using the applicable distances, the prosecutor then identified areas covering private residences, schools, and registered community organizations likely to encounter E.A. The prosecutor set up general standards that called for notice to be given to all *558 private residences within (1) a 1,000 foot radius of the registrant's residence or work place when the latter is located in an urban, high-population density area; (2) a one-half mile radius when registrant's residence or work place is located in a suburban, moderate-population density area; and (3) a one mile radius when registrant's residence or work place is located in a rural, low-population density area. The law enforcement official used similar standards for determining the public and private schools, licensed day care centers, and "registered community organizations" to be notified. For rural and suburban areas, the prosecutor set a two mile radius and, for urban areas, a one-half mile radius. Applying these standards to E.A.'s case, the prosecutor determined notification would be given (1) to private residences within a one-half mile radius of E.A.'s work place and within a one mile radius of his place of residence, and (2) to private or public schools, licensed day care centers, and registered community organizations within a two mile radius of E.A.'s residence or work place.
An assistant prosecutor testified to the development of the distance criteria. After relating the grounds for his expertise to the court, he explained the criteria were based on his office's knowledge of the population densities of the county. The assistant prosecutor conceded he neither collected statistical data nor made any comprehensive studies to determine the reasonableness of the distance criteria. Relying on his expertise and knowledge, he identified the demographic or population density criteria as consistent with the RCNL "likely to encounter" standard and the relevant Attorney General's Guidelines.
The scope of notification notice did not specifically identify the community organizations to be notified. Indeed, the assistant prosecutor could name no such organizations because none had registered pursuant to the Attorney General's Guidelines. The assistant prosecutor took the position that, when organizations registered pursuant to the Attorney General's Guidelines, an organization would be given notification if it fell within the set geographical parameters and Guidelines criteria, and that E.A. *559 was not entitled to a hearing on whether an organization qualified for notification.
The trial court approved the prosecutor's scope of notification determinations. It did so not on the reasonableness of the particular distances per se but in the context of reasonableness of those criteria as they bore on the "likely to encounter" standard of N.J.S.A. 2C:7-8c(3). This appeal followed.

II.
Doe v. Poritz requires judicial review of prosecutorial implementation of the RCNL. Doe v. Poritz, supra, 142 N.J. at 28-40, 662 A.2d 367. The Doe Court, to satisfy procedural due process and the fairness doctrine of this state, extended judicial review to the RCNL procedure to "assure that the risk of reoffense and the extent of notification are fairly evaluated before Tier Two [moderate risk of reoffense] or Tier Three [high risk of reoffense] notification is implemented." Id. at 30, 662 A.2d 367 (emphasis added).
In doing so, the Court prescribed an evidence production format. At the outset, the State has the burden of going forward with evidence "that prima facie justifies the proposed level and manner of notification." Id. at 32, 662 A.2d 367. That done, both the burden of proof and of persuasion shift to and stay with the registrant to establish by a preponderance of the evidence that the prosecutor's determination does not conform to the RCNL and the Attorney General's Guidelines adopted pursuant to the RCNL. Ibid.
The judicial review, then, entails a two-stage process wherein the trial court first resolves the issue of a prima facie compliance with the RCNL and the Attorney General's Guidelines. Then, in the second stage, the court must decide whether, by a preponderance of the evidence, the registrant contradicts the conclusion that there is compliance with the RCNL and the Guidelines. See ibid.
*560 The judicial review process designed by Doe v. Poritz is in some respects unique to our jurisprudence. It is not governed by the rules of evidence. Doe v. Poritz, supra, 142 N.J. at 31, 662 A.2d 367. Against the backdrop of a presumption for prompt determination, it is set in a summary format. Ibid. It affords the trial court substantial authority beyond the judicial norm. Id. at 31, 35, 662 A.2d 367. It vests the trial court with the authority to determine the extent of witness production as well as to determine whether cross-examination shall be required or allowed. Id. at 31, 662 A.2d 367. At the same time, it vests the court with "substantial power, beyond that permitted or used in ordinary litigation, to allow, reject, control, and limit expert testimony." Id. at 35, 662 A.2d 367. Furthermore, the trial court may in appropriate circumstances resolve issues based exclusively on documentary presentations, including expert reports. Id. at 31, 662 A.2d 367. See In re A.B., 285 N.J. Super. 399, 404, 667 A.2d 200, 203 (App.Div. 1995); In re C.A., 285 N.J. Super. 343, 348, 666 A.2d 1375, 1378 (App.Div. 1995).
Albeit unique in many respects, the judicial review established has parallels in our jurisprudential process. By its analogy to other instances where courts review decisions of state and local agencies that are vested with legislatively delegated authority, the judicial review required by Doe v. Poritz implicates use of the criteria employed to conduct judicial review in those other instances. See, e.g., Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 92-93, 312 A.2d 497 (1973) (appellate court review of administrative agency decision is correlated with the sufficiency of credible evidence and agency expertise); Kramer v. Board of Adjustment, 45 N.J. 268, 296, 212 A.2d 153 (1965) (trial court review of local zoning agency decision is correlated to local board's knowledge of their community's characteristics). Where appropriate in a Doe v. Poritz judicial review, the trial court may employ the criteria of those comparable instances of judicial review.
In beginning the two-stage judicial review process with the requirement the prosecutor present a prima facie case, Doe v. *561 Poritz followed the comparable evidential format prescribed for plenary discriminatory employment civil litigation. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677-78 (1973); Erickson v. Marsh & McLennan Co., 117 N.J. 539, 550, 569 A.2d 793 (1990). Consistent with that comparable format, the trial court must resolve what proofs establish the prima facie requirement, those being, in this instance, what factors are pertinent to the establishment of an appropriate scope of notification.
Pertinent factors are both nonvariable and variable. Nonvariable factors are those that relate to all registrants. Variable factors are those that relate to the specific registrant and his community. More specifically, the nonvariable factors recognize commonality of circumstances that relate to all registrants. They are factors based on common sense; factors that any reasonable person would recognize relate to the likely whereabouts of an adult in today's society. Variable factors recognize case-by-case circumstances that relate to the specific registrant before the court. They also relate to individualized circumstances of a community that may be encountered in the process of affording the public with proper notice.
Doe v. Poritz identified certain nonvariable and variable factors. Under the former, geography, in the sense of proximity or closeness, is critical. Doe v. Poritz, supra, 142 N.J. at 32, 662 A.2d 367. Implicit in geographical closeness are factors demonstrable from demographics such as population concentration or density and how that density bears, in a common sense manner, on adult and child mobility in today's society. The Attorney General's Guidelines implicitly recognize the impact of adult mobility factors in the Guideline's Sex Offender Risk Assessment Scale Manual (SORAS). There, proof of advanced age or debilitating illness of the registrant, factors which may severely limit mobility, allow for an exceptional deviation from the SORAS criteria.
The Doe v. Poritz variable factors are correlated to the individual registrant as well as to unique community circumstances encountered *562 in the effort to disseminate the RCNL notification. As the Court noted:
Depending upon the particular offender, factors other than geography may be considered if they are relevant to the offender's likely whereabouts, such as an offender's proclivity for certain locations, and geographic considerations may be affected by the nature of the offender's characteristics and the institution in question, e.g., a repetitive and compulsive pedophile and a large elementary school.
[Id. at 37, 662 A.2d 367.]
See also Guideline V (definitions of "likely to encounter" and "fair chance to encounter"). Unique circumstances created by administrative difficulties of notification in a community may also inject variations in the scope of notification. Doe v. Poritz, supra, 142 N.J. at 36-37, 662 A.2d 367.
Doe v. Poritz also recognized the impossibility for the Court, and implicitly the Attorney General, to define the area around a registrant's residence or work place that may be included in Tier Three notification. Id. at 37, 662 A.2d 367. Thus, each county prosecutor is, under the legislative authority delegated, responsible for the identification of relevant factors in the community.
Here, in the nonvariable category the prosecutor has set standards based on population density correlated with distances reflective of mobility and need for mobility in each identified density area. We conclude, giving deference to the prosecutor's knowledge of the pertinent areas, that a prima facie case for a fair scope of notification has been established.
Common sense projects that population density and societal mobility have a mutual relationship. The more concentrated the population, the more likely an adult is to limit his or her range of contact with members of the public. In high-population density areas, it is more likely that available resources, such as food stores, places for socializing, places which provide legitimate personal service, and the like, will be found with greater concentration.
Clearly, when the range of a registrant's likely whereabouts or operation is limited to 1,000 feet, a distance any physically capable *563 adult can readily cover, there can be no dispute that the distance encompasses areas where the registrant is fairly likely to have contact with members of the public. Similarly, the one-half mile and one mile ranges for suburban and rural areas, respectively, lay down a fair basis for scope of notification. In suburban or rural areas, the lower population density, and therefore the lesser concentration of housing and public resources, gives rise to the reasonable conclusion that persons residing or working in such areas will likely expand their spheres of operation. The need to travel farther to reach work places and resources, when correlated with the ready mobility of today's society through public or private transportation, make the one-half mile and one mile ranges reasonable grounds for projecting the likely whereabouts of any registrant.
We reach these conclusions despite the fact the prosecutor presented no statistical data or studies on the reasonableness of the particular distances selected. We do not read Doe v. Poritz to require statistical studies on scope of notification since it did not compel such studies on the Tier rating process. 142 N.J. at 33-34, 662 A.2d 367. Moreover, we are satisfied that common sense can dictate reasonableness, a concept that when applied here demonstrates the establishment of a prima facie case for the scope of notification determinations to residences in the area of E.A.'s places of residence and work. Additionally, in light of the fact E.A. provided insufficient evidence to persuade the trial court by a preponderance of the evidence that the scope of notification determinations as to private residences were violative of the RCNL and the Guidelines, that portion of the order under appeal is affirmed.
Recognizing the need to facilitate the judicial review process, we direct the prosecutor in the future to prepare a grid, color-coded, large-scale map of the county to identify the low-, moderate-, and high-population density areas on a municipality-by-municipality basis. The map can be based on census data, county planning board data, or information provided by local planning boards and law enforcement officials to assist in refining the *564 correctness of the prosecutor's knowledge of the county. The prosecutor, utilizing such a map, can then specifically locate a registrant's residence or place of business within the identified population density zones and apply the distance criteria approved. In instances where the residence or place of business borders on different population density zones, the prosecutor may justify the need for application of the differentiated distance notification standards.
Further, the radii or distances of two miles from residence or work place to schools and operating licensed day care centers are also reasonable. The variable factors, when combined with the now postulated valid nonvariable factors, support the fairness of the scope of notification to the schools and operating licensed day care centers under both prima facie and preponderance of the evidence criteria.
We are satisfied that the nonvariable factors postulated as valid, together with the variables present in this instance, result in sufficient credible evidence to support that increase. Doe v. Poritz recognized that the nature of the registrant's characteristics and the characteristics of the institutions in question, e.g., "a repetitive and compulsive pedophile and a large elementary school" may influence considerations as to the registrant's likely whereabouts. Id. at 37, 662 A.2d 367. Such characteristics, combined with evidence of seeking out strangers, stalking, and other rating criteria under SORAS, support the increased distance and constitute prima facie evidence, particularly when the prosecutor, in the exercise of his or her expertise, deems those factors persuasive in setting the radii for notification. Here, although not specifically relied upon by the prosecutor, from a sufficient credible evidence viewpoint, the individual characteristics of E.A. support a conclusion that the two mile radius adopted satisfies the fairness test. E.A. is a repetitive, compulsive pedophile. The record discloses he not only sought out children who were strangers to him, but also did so on at least one occasion in a community some distance from where he resided. Given such evidence, we *565 are clearly satisfied the two mile radius for notification of schools and operating licensed day care centers establishes a scope of notification that is fair and consistent with the RCNL and the Attorney General's Guidelines.

III.
We turn now to the issue of giving notice to unregistered community organizations that may, some day in the future, register pursuant to the Guidelines. Doe v. Poritz stated "[t]here shall be no automatic inclusion of an organization simply because it is `registered.'" Doe v. Poritz, supra, 142 N.J. at 35, 662 A.2d 367. It also limited notice to "community organizations that own or operate an establishment where children gather under their care, or where women are cared for...." Id. at 35, 662 A.2d 367. The Attorney General's Guidelines follow Doe's dictates. See Guideline IV, Organization, Agencies and Schools Entitled To Notification. The Guidelines also repose responsibility for RCNL community education on county prosecutors. Such education necessarily includes notification of the standards and methodology for registration.
The RCNL and its implementation are in their infancy. Thus, the opportunity to educate the public to facilitate registration has been limited. That notwithstanding, Doe v. Poritz dictates a judicial review to satisfy the parameters of procedural due process and the fairness doctrine of this state. Those parameters cannot be met unless a registrant is provided with a list of registered community organizations to be notified and the basis for their notification. Consequently, we reject the prosecutor's contention of open-ended authority to give RCNL notification without allowing a registrant the opportunity to challenge notification of those organizations.
We do not suggest that the prosecutor has a continuing obligation to notify each registrant of every newly registered community organization that qualifies for notification. Instead, we suggest the Attorney General establish a procedure for publication of *566 notice to the public in the affected community of organizations which register as qualified for notification, with a waiting period to provide affected registrants with an opportunity to be heard on notification. We further direct the prosecutor to implement the community education process as expeditiously as possible so that the list of registered community organizations and their qualifications can be provided with the Scope of Notification Form in future cases.
The remand is to give the prosecutor the opportunity to develop a list of registered community organizations and their qualifications. Once that is done, E.A., if he so chooses, shall be provided with an opportunity to present a written certification by way of contradiction. The trial court shall resolve the issue on the documentation presented, with argument, if requested. Parenthetically, we note that we do not consider such a list as required to include identification of public and private schools or operating licensed day care centers.

IV.
The order under appeal is affirmed except the provision for giving notification to community organizations that register in the future. On the latter issue, the matter is remanded for further proceedings consonant with this opinion.
NOTES
[1] The initials used in the caption are fictitious. This court has, for the purposes of confidentiality, refrained from identifying the names of those involved as well as the attorneys, Municipality, and County in question.