669 A.2d 303

IN THE MATTER OF REGISTRANT G.B.: APPLICATION
FOR JUDICIAL REVIEW OF NOTIFICATION AND
TIER DESIGNATION [1].

Superior Court of New Jersey
Appellate Division

Argued December 11, 1995—Decided January 18, 1996.

---

[1] The initials used in the caption are fictitious. This court has, for the purposes of confidentiality, refrained from identifying the names of those involved as well as the attorneys, Municipality and County in question.

Before Judges SHEBELL and WALLACE.

The opinion of the court was delivered by

WALLACE, J.A.D.

Registrant sought a stay pending his appeal of the trial court's affirmation of the prosecutor's classification of him as Tier Two in the implementation of the Registration and Community Notification Laws (RCNL), *N.J.S.A.* 2C:7–1 to –11, and the judicial review process required by *Doe v. Poritz,* 142 *N.J.* 1, 662 *A.*2d 367 (1995). We granted a stay pending further order. We now affirm in part and remand for further hearing.

Registrant contends that (1) the RCNL violates *ex post facto,* due process, and double jeopardy provisions of the constitution; (2) the failure to stay the proceedings to allow the public defender to handle the matter denied him equal protection of the laws; (3) he was entitled to a hearing to challenge his Tier designation; and (4) the geographical scope of notification was arbitrary because there was no showing of a fair chance to encounter the registrant.

Briefly, registrant was indicted for various sexual offenses arising out of inappropriate contact with his younger female cousin. In a statement given to police in November 1991, registrant acknowledged that on at least three occasions over a two or three year period, he had his cousin perform fellatio on him in his parents home. Registrant entered into a plea agreement with the State and pled guilty to second degree sexual assault in violation of *N.J.S.A.* 2C:14–2b. Pursuant to the plea bargain, the remaining counts of the indictment charging registrant with aggravated sexual assault, sexual assault, endangering the welfare of a child and child abuse were dismissed. The presentence report noted that registrant said the last incident occurred in 1988. Registrant was sentenced in 1992 to a five-year custodial term to be served at Avenel.

Registrant was released from Avenel in June 1995. As a convicted sex offender, he is subject to the provisions of the RCNL. In October 1995, registrant received a letter of notification that he would be classified in Tier Two. The notice informed the registrant that the classification was based on the Sex Offender Risk Assessment Scale (Scale) attached to the notice. The Scale score was 57 which classified the registrant as Tier Two, i.e., his presence in the community poses a moderate risk. This notice also instructed that unless he applied for judicial review, all schools within a distance of two miles of his residence would be notified. Registrant applied for judicial review and was assigned counsel.

His attorney filed motions seeking: (1) to stay the review hearing until the Public Defender could represent registrant, (2) to preclude community notification, and (3) to declare *N.J.S.A.* 2C:7–1 to –11 unconstitutional because, as it applied to defendant it constituted an *ex post facto* law, violated his rights to due process, and violated principles of double jeopardy.

A conference was held before the designated Megan's Law judge on November 15, 1995. The registrant argued his motions and requested a hearing to challenge various ratings in the Scale.

The judge denied the motions. Registrant then noted that he was employed which would reduce criteria thirteen from a moderate risk to a low risk. The prosecutor agreed and also conceded that criteria seven, the length of time since the last offense, should be lowered from nine to three because the last incident had occurred between two to three years prior to registrant's arrest in 1991.

The registrant argued that criteria number two, degree of contact, should be reduced from fifteen for penetration, to ten for fondling under clothing, because registrant pled guilty to sexual assault. Counsel for registrant recognized that based on registrant's uncounselled admission, there was evidence in the record of penetration. However, he argued that registrant's admission was never subject to a *Miranda* or *Jackson–Denno* hearing, and therefore, he was entitled to a hearing. Similarly, with respect to criteria number six, duration of offensive behavior, he argued that registrant had pleaded guilty to only one offense, and therefore, the rating should be reduced from a three, for over two years, to a zero, for less than one year. He further argued that criteria number eight, history of anti-social acts, should be reduced from one, for a limited history, to zero, for no history. Finally, he argued that criteria number twelve, residential support, should be a zero, for stable and appropriate, rather than a one, for stable and appropriate but no external support system.

The prosecutor argued that registrant had admitted in his statement, to numerous instances of fellatio and sexual intercourse with the victim and had acknowledged that the offenses occurred over a period of two or three years. Thus, the prosecutor argued, there was sufficient evidence to support the relevant grading for criteria two and seven. Further, the prosecutor argued there was evidence that the registrant was convicted in 1987 for theft and burglary and in 1988 for a weapons offense, justifying a finding of limited history of anti-social acts in criteria twelve.

Registrant also contended that notification of schools and community organizations that have children in its care in a two mile geographic radius from the site of his home and work was

arbitrary. In addition, registrant sought the appointment of three experts, a psychiatric expert to evaluate the risk of recidivism, a statistical expert to prepare an analysis on recidivism, and a human factor expert who would conduct a study on whether notification bears any nexus to the prevention of the harm sought to be protected against.

The judge denied the registrant's request for an evidentiary hearing, finding sufficient evidence to decide the issues related to his challenges to the Scale score. The judge found substantial evidence of penetration, including defendant's statement, which justified a three under criteria number two. With regard to criteria six, duration of offensive behavior, the judge similarly found there was sufficient evidence to demonstrate that the offensive conduct took place over a period in excess of two years, to justify a three. Next, the judge noted that there was clearly at least a limited history of anti-social acts in criteria eight, since as a result of a 1988 weapons conviction, registrant was terminated from the Pretrial Intervention Program on his burglary charge. The judge recognized some question concerning criteria twelve, residential support, but concluded that it was not a material issue because any adjustments here would not impact on registrant's Tier Two classification.

The judge then denied registrants requests for experts and stated:

I conclude, upon my reading of *Doe v. Poritz,* that the Supreme Court did not intend that these proceedings be converted into situations in which experts were going to testify unless there was a clear showing or need for an expert with respect to the classification of the defendant. Now, I recognize the fact that the risk assessment scale is not part of the decision of the Supreme Court. I don't believe it's been approved by the Supreme Court. It's a question of whether a Judge, at this particular point in time, is going to rely on this scale, and in effect, use this scale, or whether the Courts are going to go off on some other tangent and convert these hearings into some other types of hearings which would involve, inexorably, battles of experts if the defense—I shouldn't say the defense. If the registrant, or the applicant at this point, were permitted to go out and hire experts of the types suggested by [counsel] the State would do the same thing, we would convert these hearings into long battles of experts. Moreover, if we are going to place great weight on the risk assessment scale, the testimony of these experts would be irrelevant because the factors in the scale, at least the ones that are material here,

do not call for expert testimony. It's not required in order to resolve the presence or absence of the factors mentioned in the scale.

As far as the notification, at this point, with only the guidance of the Supreme Court decision and the fact that the schools have to be notified, the fact of the proximity of these other organizations to where the defendant is, I cannot say that the prosecutor's decision is arbitrary, capricious, unfair or unreasonable, and I conclude that the notification proposal by the prosecutor is appropriate.

Registrant had recently obtained employment. The prosecutor, therefore, had not compiled the list of community organizations that would be notified in the area in which registrant had received employment. The trial judge scheduled a second conference for the prosecutor to give the list of community organizations to registrant. At the second conference, registrant indicated that his job would likely terminate by December 31. Based on this information, the prosecutor agreed to withhold notification for the work area organizations and registrant agreed to notify the Prosecutor's Office if his employment continued after December 31, 1995.

Registrant also argued that the prosecutor's guidelines, post-*Doe v. Poritz*, were not promulgated pursuant to the Administrative Procedure Act and were therefore, a nullity. The trial judge summarily rejected this argument.

Registrant sought an emergent stay. We granted the stay pending our decision on the merits of the appeal.

We need not address registrant's constitutional arguments. The Supreme Court in *Doe* rejected these arguments. The Court held that the RCNL was constitutional, subject to judicial review before notification. *See Doe v. Poritz, supra,* 142 *N.J.* at 12, 662 *A.*2d 367.

■ Moreover, there is no requirement that each Registrant be represented by the Public Defender. Registrant is represented by competent counsel. Registrant's counsel argues that registrant would be better served by being represented by the Office of the Public Defender. That simply is not the test. We find no error in the trial court's rejection of this argument and the denial of registrant's request for a stay to be represented by the Office of

the Public Defender. The trial court found counsel to be a capable and experienced attorney who was fully qualified to represent registrant. We perceive of no infirmity by the appointment of counsel who is not a member of the Office of the Public Defender.

■ Registrant next contends that a hearing should have been held to test the underlying factual basis for the prosecutor's risk assessment scale evaluation resulting in a Tier Two classification. The judicial review process developed in *Doe v. Poritz* is not governed by the rules of evidence. *Id.* at 31, 662 *A.*2d 367. We held in *In re C.A.*, 285 *N.J.Super.* 343, 347–48, 666 *A.*2d 1375 (App.Div.1995) that "the details of a sexual offense, which is not the subject of a conviction, may be considered in the risk assessment scale calculus." Further, we noted that the test of admissibility should be the reliability under the totality of the circumstances of the hearsay statements being considered. *Id.* at 348, 666 *A.*2d 1375. The trial judge was satisfied, and we are as well, that registrant's admissions, along with the victim's statement, were sufficient to justify a finding of penetration, for the degree of contact, and a finding of over two years, for the duration of the offense.

It should also be noted that the registrant did not attempt to advance any evidence to counter the State's *prima facie* case of penetration in excess of a two year period. Rather, he urged that the trial judge should only consider the evidence surrounding his plea to sexual contact upon a victim under the age of thirteen. Further, registrant argued that under the Sixth Amendment, he should be able to confront the evidence of penetration. As noted above, hearsay statements found to be reliable under the totality of circumstances may be considered. *Ibid.* The primary evidence was registrant's own statement given to the police on November 19, 1991, where he said that he had the victim perform oral sex on him over a period of more than two years. Moreover, this is a civil action and the constitutional rights urged by registrant are

not implicated. There was simply no need for a hearing on these issues.

Registrant also urges that the prosecutor's proposal to notify organizations within a two mile radius of his home and place of employment is arbitrary and bears no relationship to reality. The Supreme Court, in discussing the manner of notification for Tier Two notification, made it clear that "only those community organizations that own or operate an establishment where children gather under their care, or where women are cared for, shall qualify, and only those that are 'likely to encounter' the offender as discussed in connection with Tier Three[,]" were to be notified. *Doe v. Poritz, supra,* 142 *N.J.* at 35, 662 *A.*2d 367. In the case of Tier Two notification, "[t]he factor that will ordinarily be critical to a determination of 'likely to encounter' is geography—how close is the institution or organization, . . . , to the offender's residence or place of work or school." *Id.* at 37, 662 *A.*2d 367. The Court declined to define the area to be included within the notification process and noted that depending upon the offender, factors other than geography may be considered. *Ibid.*

We recognize that a common sense approach should be followed in establishing the area of notification. However, the prosecutor has offered no evidence at all in establishing a two mile radius of registrant's residence and place of work for the area of notification. Registrant challenges this as arbitrary. We are not prepared to say that a two mile radius is arbitrary. However, we are satisfied that the record below was not adequate for the trial judge to decide whether the prosecutor's proposed area of notification was reasonable, particularly in view of registrant's sexual offenses with a family member of the opposite sex that occurred in his parents' home.

The notice to registrant established that notification would be made and listed the areas of notification as well as the targeted community organizations. At the conference, the only explanation given by the prosecutor to registrant's objection to the area of notification was that "it was the prosecutor's position that those

locations that were within a two mile radius of [registrant's] place of residence and place of employment, he would likely encounter people in that area." Aside from the schools, it is not entirely clear that all of the organizations listed were within a two mile radius of the registrant's residence. Even if they are, the record does not present a *prima facie* case to show they are likely to encounter the registrant. "There shall be no automatic inclusion of an organization simply because it is 'registered.'" *Doe v. Poritz, supra,* 142 *N.J.* at 35, 662 *A.*2d 367.

The view we expressed in *In re E.A.,* 285 *N.J.Super.* 554, 667 *A.*2d 1077 (App.Div.1995) is instructive. In *E.A.,* the prosecutor established the scope of geographic notification in terms of distances keyed to density of population. The prosecutor set up general standards that called for notice within varying distances of registrant's residence and work place, depending on whether it was located in an urban, high population area; a suburban, moderate population area; or a rural, low population area. The prosecutor set a 1,000 foot radius of the registrant's residence or work place for notification in an urban, high population area; a one-half mile radius for notification in a suburban, moderate population area; and a one mile radius for notification in a rural, low population area. *See In re E.A.,* 285 *N.J.Super.* 554, 557–58, 667 *A.*2d 1077 (App.Div.1995). An assistant prosecutor testified that the criteria was "based on his office's knowledge of the population densities of the county." *Id.* at 558, 667 *A.*2d 1077. Although no studies had been performed, "[r]elying on his expertise and knowledge," the assistant prosecutor identified the demographic or population density criteria as consistent with the RCNL likely to encounter standard and the relevant Attorney General's Guidelines. *Ibid.* We concluded that "giving deference to the prosecutor's knowledge of the pertinent areas, that a *prima facie* case for a fair scope of notification has been established." *Id.* at 562, 667 *A.*2d 1077. Further, we noted that:

We reach these conclusions despite the fact the prosecutor presented no statistical data or studies on the reasonableness of the particular distances selected. We do not read *Doe v. Poritz* to require statistical studies on scope of notification since

it did not compel such studies on the Tier rating process. 142 *N.J.* at 33–34 [662 *A.*2d 367]. Moreover, we are satisfied that common sense can dictate reasonableness[.] ...

[*Id.* at 563, 667 *A.*2d 1077.]

Just as important, we directed:

the prosecutor in the future to prepare a grid, color-coded, large-scale map of the county to identify the low-, moderate-, and high population density areas on a municipality-by-municipality basis. The map can be based on census data, county planning board data, or information provided by local planning boards and law enforcement officials to assist in refining the correctness of the prosecutor's knowledge of the county. The prosecutor, utilizing such a map, can then specifically locate a registrant's residence or place of business within the identified population density zones and apply the distance criteria approved. In instances where the residence or place of business borders on different population density zones, the prosecutor may justify the need for application of the differentiated distance notification standards.

[*Id.* at 563–64, 667 *A.*2d 1077.]

*E.A.* addressed Tier Three notification. Based on the particular offender, the prosecutor in *E.A.* determined that notification would be given to private residences within a one-half mile radius of E.A.'s work place and within a one mile radius of his residence, and to private or public schools, licensed day care centers and registered community organizations within a two mile radius of E.A.'s residence and work place. Based on the variable factors that related to E.A., we found sufficient credible evidence to support the increase in the area of notification. *Id.* at 564–65, 667 *A.*2d 1077.

In the present case, the prosecutor offered no guidelines for the notification area of a two mile radius of registrant's residence and work place. Nor did the prosecutor indicate whether the area where registrant resided was urban, suburban, or rural. Thus, the record is silent as to the reason the two mile geographical area for notification was selected. Consequently, we remand for the prosecutor to establish guidelines for the scope of notification, consistent with the RCNL and the Attorney General's Guidelines. Just as we noted in *E.A.*, the prosecutor should prepare a map with the detail and information that we called for there. *Id.* at 563–64, 667 *A.*2d 1077.

■ Registrant also sought experts to assess the statistical probability of recidivism for particular classes of defendants and the probability of whether warnings of certain types apply to certain types of offenders.  As we stated in *E.A.*, we do not read *Doe v. Poritz* to require statistical studies on the scope of notification.  *See E.A., supra,* at 562–63, 667 *A.*2d 1077.  However, in light of the circumstances surrounding the offense, we are persuaded that the registrant should be permitted to retain an expert and to present testimony at the hearing to show that the variable factors as related to him, should result in a lesser Tier classification.  That is, registrant may attempt to prove that the variable factors applicable to him, demonstrate that he is so unlikely to reoffend, that he should be classified as a Tier One offender, notwithstanding his actual Scale score.  In this regard we note the comment in *Doe* that:

> Certainly we do not foreclose or discourage the production of expert testimony on both sides, but we grant to the court substantial power, beyond that permitted or used in ordinary litigation, to allow, reject, control, and limit expert testimony in order to render these proceedings administratively effective, practical, and timely.
>
> [*Doe v. Poritz, supra,* 142 *N.J.* at 35, 662 *A.*2d 367.]

We remand for a hearing consistent with the views expressed herein.