776 A.2d 780

IN THE MATTER OF REGISTRANT M.F.

Argued May 1, 2001—Decided July 17, 2001.

46

*Jessica S. Oppenheim,* Deputy Attorney General and Barry Stephen Finkel, Assistant Attorney General, argued the cause for appellant, State of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney; *Ms. Oppenheim, Mr. Finkel* and *Dominick DiRocco,* Deputy Attorney General, on the briefs).

*Michael Z. Buncher,* Deputy Public Defender, argued the cause for respondent, M.F. (*Peter A. Garcia,* Acting Public Defender,

attorney; *Mr. Buncher* and *Edward L. Barocas*, Assistant Deputy Public Defender, on the brief).

*Jessica A. Roth* argued the cause for amicus curiae, American Civil Liberties Union of New Jersey (*Gibbons, Del Deo, Dolan, Griffinger & Vecchione*, attorneys; *Ms. Roth, John J. Gibbons* and *Lawrence S. Lustberg*, on the brief).

The opinion of the Court was delivered by

LaVECCHIA, J.

Registrant, M.F., is a forty-two year old man with three sexual offenses cognizable under the Registration and Community Notification Laws ("RCNL"), *N.J.S.A.* 2C:7-1 to -11, more commonly known as Megan's Law. The Appellate Division affirmed the trial court's classification of M.F. as a moderate risk to recidivate, designating him a Tier Two sex offender, but deleted all community notification from the scope of notification that normally attends a Tier Two sex-offender designation. The Appellate Division held that for Tier Two notification to take place, the State must show by clear and convincing proof that children attending the schools and day-care centers in the pertinent geographic region are "reasonably certain" to encounter registrant.

We granted certification, 165 *N.J.* 676, 762 *A.2d* 657 (2000), and now reverse. The Appellate Division imposed too heavy a burden on the State in reviewing registrant's scope of notification. Once M.F.'s classification as a Tier Two offender was correctly established, the RCNL and the Attorney General's implementing guidelines presumptively required notification to schools and organizations in actual charge or care of women or children within the pertinent geographic area. Although specific limiting circumstances in individual cases may be put forward to counter that presumptive requirement, the State is not required affirmatively to establish, absent proof of those limiting circumstances, that a Tier Two registrant is reasonably certain to be encountered at the community organizations to which notice would be given. We

remand this case to the Law Division for a rehearing applying the standard described in this opinion.

I.

M.F.'s criminal history reveals three progressively serious sexual offenses. In 1979, he was arrested for criminal sexual contact, *N.J.S.A.* 2C:14–3b, occurring in a Union County department store. The presentence report described the charge as "open lewdness" and included touching women. The charge ultimately was dismissed as part of a plea agreement in which he pleaded guilty to possession of a controlled dangerous substance.

In 1985, M.F. again was charged with criminal sexual contact pursuant to *N.J.S.A.* 2C:14–3b. In that incident, police were summoned to investigate a suspicious person in a vehicle parked in the lot of a Clifton department store. An undercover officer approached the vehicle and observed M.F. sitting behind the steering wheel with his pants unfastened and his private parts exposed. The officer stated that M.F. was masturbating while looking through the front window of the department store. According to the officer, M.F. saw him approaching, but continued to masturbate. M.F. was convicted and sentenced to one year of probation.

M.F.'s most recent sexual-offense conviction involved second-degree sexual assault, *N.J.S.A.* 2C:14–2b, and that offense rendered him subject to the RCNL. In 1997, while in the rear portion of a Pathmark store in Elizabeth, M.F. exposed his private parts and proceeded to masturbate in the presence of a seven-year-old girl. M.F. fled the store before the visibly upset child could inform her mother. The child later identified M.F. on a video taken by the store's security camera. M.F. was convicted and sentenced to five years of probation, and required to obtain alcohol and drug counseling, and to pay various fines. He also was informed of his obligation to register pursuant to the RCNL.

By letter dated February 25, 2000, the Union County Prosecutor's Office informed M.F. that he posed a "moderate risk" of re-

offense and that he was classified as a Tier Two sex offender under the RCNL. The letter explained that, barring an appeal by M.F., the Union County Prosecutor's Office would reveal M.F.'s identity and sexual-offender status to appropriate personnel at "all community organizations that own or operate an establishment where children gather under their care (such as girl/boy scouts or little league) or women are cared for (such as battered women shelters)," located in the area surrounding M.F.'s residence in Roselle. M.F. was provided with a map showing that four schools, two playing fields, a church, and a nursery were located within the designated notification area. The oldest of M.F.'s three children attends a high school in the designated area.

M.F. sought judicial review of his classification. At his hearing, he argued that the prosecutor erred in scoring his risk of re-offense under the Attorney General's Registrant Risk Assessment Scale ("RRAS"). Although the court agreed in part, and reduced M.F.'s scaled score by two points, M.F.'s revised aggregate score still placed him well within the moderate-risk range. The trial court affirmed M.F.'s Tier Two classification and the prosecutor's "scope and manner of notification." Only the scope of notification was appealed.

At oral argument on appeal, the Appellate Division panel inquired:

[W]e just wonder what's accomplished by notifying the schools and community organizations of his presence in the area. He's shown no propensity to—to enter schools or even to enter school playgrounds, and if he repeats his—his previous misbehavior, having given notices to schools and community organization [sic], would have really served no useful purpose, except to put limits on—on his way of life.

The State asserted that the proposed scope of notification was reasonable because M.F.'s three sexual offenses established that he had a habit of leaving the confines of his residence to seek his victims, and that his victims included a child. Noting that M.F.'s offenses occurred in a department store, grocery store, and shopping center parking lot, not in a school, the court set forth its interpretation of the State's burden on the issue of scope of

notification: "The question is, has the State shown, by clear and convincing evidence, that this man is likely to encounter anybody in a school?" Unconvinced that the State had met that burden, the court issued an order affirming M.F.'s Tier Two classification, but "delet[ed] therefrom all provisions for community notification." The order further stated that there was "no clear and convincing evidence that the children attending the schools and agencies designated in the order are reasonably certain to encounter registrant or that registrant visits [those] locations on a regular basis."

When we granted the State's petition for certification on the issue of the standard that the State must meet, we also requested that the parties address any potential impact that the recently enacted constitutional amendment concerning sex-offender notification, *N.J. Const.* art. IV, § 7, ¶ 12, may have on this appeal. The American Civil Liberties Union of New Jersey was granted *amicus curiae* status to address that issue. Upon review of the papers submitted, and the argument before the Court, we are convinced that the new Amendment has no applicability to this appeal. Accordingly, we shall review the question of the proper scope of notification for M.F. under the existing RCNL and current *Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws* (March 2000) ("Guidelines").

## II.

### A.

In 1994, the Legislature passed the RCNL in response to a series of predatory sexual offense incidents in New Jersey that touched a wellspring of concern for our young and vulnerable. *N.J.S.A.* 2C:7–1 to –11. The Legislature declared:

a. The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.

b. A system of registration of sex offenders and offenders who commit other predatory acts against children will provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons.

[*N.J.S.A.* 2C:7–1.]

The RCNL consists of two components. It requires certain sex offenders, depending on the type and time of offense, to register with local law enforcement agencies. *N.J.S.A.* 2C:7–2 to –4. The second component, which is the focus of this appeal, requires notification to the community concerning registrants assessed to be at moderate or high risk to re-offend. *N.J.S.A.* 2C:7–5 to –11. The Legislature delegated to the Attorney General the authority to "promulgate guidelines and procedures for the notification required pursuant to the provisions of this act." *N.J.S.A.* 2C:7–8a. The Legislature directed that "[t]he guidelines shall identify factors relevant to the risk of re-offense and shall provide for three levels of notification depending upon the degree of the risk of re-offense." *Ibid.; see also N.J.S.A.* 2C:7–8b (listing nonexhaustive factors relevant to the risk of re-offense); *In re Registrant J.M.,* 167 *N.J.* 490, 772 *A.*2d 349 (2001) (reviewing development of RRAS as satisfying legislative delegation to Attorney General to devise assessment tool for use in predicting risk of re-offense); *Doe v. Poritz,* 142 *N.J.* 1, 14, 662 *A.*2d 367 (1995) (stating that Legislature sought to identify those most likely to re-offend and then limited extent of notification based on that conclusion). The RCNL provides the following directive concerning the scope of notification:

c. The regulations shall provide for three levels of notification depending upon the risk of re-offense by the offender as follows:

(1) If risk of re-offense is low, law enforcement agencies *likely to encounter* the person registered shall be notified;

(2) If the risk of re-offense is moderate, organizations in the community including schools, religious and youth organizations shall be notified in accordance with the Attorney General's guidelines, in addition to the notice required by paragraph (1) of this subsection;

(3) If risk of re-offense is high, the public shall be notified through means in accordance with the Attorney General's guidelines designed to reach members of the public *likely to encounter* the person registered, in addition to the notice required by paragraphs (1) and (2) of this subsection.

[*N.J.S.A.* 2C:7–8c (emphasis added).]

The Attorney General adopted the Guidelines and in *Doe, supra,* 142 *N.J.* at 28, 662 *A.*2d 367, we upheld the RCNL and accompanying Guidelines against challenges under both the Federal and State Constitutions. Generally, we endorsed the notification scheme set forth therein:

> The Community Notification Law, along with the Attorney General's Guidelines, provide a coherent system of notification calibrated to the degree of risk of reoffense: low risk offenders or higher will trigger notification to law enforcement who will thereby have ready access to all offenders in the area when needed either because of reported or perceived threats, or actual incidents when quick response is most important; moderate offenders and higher will trigger a notification calculated to alert organizations charged with the supervision and care of children and women, which are likely to encounter them, to their potential presence and risk; and high-risk offenders will trigger notification to that portion of the community likely to encounter them.

[*Id.* at 25, 662 *A.*2d 367.]

Nonetheless, confronted with a specific allegation of excessiveness in the notification provisions, we interpreted "the statute to require for Tier Two notification that the institution or organization to be notified is one that is 'likely to encounter' the offender" and "defined ... what 'likely to encounter the offender' means...." *Id.* at 29, 662 *A.*2d 367. Tier Two notification for the moderate-risk registrant was limited to those nearby schools and organizations that are in charge of the actual care or supervision of children or women. *Id.* at 29, 35, 662 *A.*2d 367. And, we limited Tier Three notification to conform also to the "likely to encounter" requirement under the statute, "thereby revising those provisions of the Guidelines that suggest the possibility that notification would be extended to the entire community regardless of whether those notified are likely to encounter the offender." *Id.* at 29–30, 662 *A.*2d 367.

In explaining the "likely to encounter" standard, the Court stated that "[t]he word 'likely' shall be taken in its usual sense: to mean not 'possibly' but 'likely,' not in the sense of 'probably' but rather in the sense of 'having a fair chance to encounter.'" *Id.* at 36, 662 *A.*2d 367. The point was illustrated as follows:

*The factor that will ordinarily be critical to a determination of 'likely to encounter' is geography—how close is the institution or organization, in the case of a Tier Two notification, to the offender's residence or place of work or school.* In some municipalities, not every institution or organization that would otherwise qualify for notification may be close enough to warrant same, but in some cases, as suggested above, institutions or organizations in other municipalities may be close enough. The same observations can be made for Tier Three notification. We do not attempt to define the area around the offender's residence or place of work or school that may be included within the notification process, and assume it may differ from one locale to another. *Depending upon the particular offender, factors other than geography may be considered if they are relevant to the offender's likely whereabouts, such as an offender's proclivity for certain locations, and geographic consideration may be affected by the nature of the offender's characteristics and the institution in question, e.g., a repetitive and compulsive pedophile and a large elementary school.*

[*Id.* at 37, 662 A.2d 367 (emphasis added).]

In *Doe*, the Court placed the burden on the registrant to show by a preponderance of the evidence that the State's proposed level and manner of notification does not conform to the RCNL and the Guidelines. *Id.* at 32, 662 A.2d 367. That approach was rejected, however, in *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). Placing the burden on the registrant was held to violate the requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.* at 1108. The burden-shifting paradigm established by this Court, thus, was modified so that the "burden of persuasion at a Megan's Law hearing [shall] be on the state rather than the registrant, and that the state's burden at such a hearing be to demonstrate the propriety of the tier classification and the notification plan by clear and convincing evidence." *Ibid.*

B.

Notwithstanding that burden allocation, the presumptive scope of notification for a Tier Two registrant posing a moderate risk of re-offending is based on consideration of those organizations that care for or supervise women and children located within a certain geographic radius of the registrant's residence, or place of work, or schooling. *Doe, supra,* 142 N.J. at 36, 662 A.2d 367. The

Guidelines set forth organizations in the community that may receive notification. In order to be placed on a notification list, an organization must register with either the community's local law enforcement agency, the State Police, or the County Prosecutor's Office. Guidelines, *supra*, at 10–12. "All public, private and parochial educational institutions up through grade 12, licensed day care centers and summer camps will be automatically included on the notification list and do not need to register." *Id.* at 10, 662 *A.*2d 367. But not all organizations on the notification list are entitled to notification. "Rather, the purpose of the notification list is to enable the Prosecutor to identify those organizations that are 'likely to encounter' a given registrant in order to provide notification in any specific case." *Ibid.* Ultimately, it is the responsibility of the prosecutor and the courts to determine who is to receive notice. *Id.* at 8, 662 *A.*2d 367.

The Guidelines contain definitions related to the scope of notification. *Id.* at 13–14, 662 *A.*2d 367. The term "likely to encounter" is defined as follows:

The term 'likely to encounter' shall mean for purposes of these guidelines that the law enforcement agency, community organization or members of the community are in a location in close geographic proximity to a location which the offender visits or can be presumed to visit on a regular basis. For example, such places will ordinarily include residence, place of work or school, commercial establishments frequented by the offender and any other sites visited on a regular basis. The 'likely to encounter' zone of notification may be as small or large as the facts and circumstances warrant, subject to judicial review and these guidelines.

In addition to geographic proximity, there must also be a 'fair chance to encounter' the offender. 'Fair chance to encounter' shall mean for purposes of these guidelines that the types of interaction which ordinarily occur at the location and other attendant circumstances demonstrate that contact with the offender is *reasonably certain.* For example, barring other attendant circumstances, it is not reasonably certain that there is a 'fair chance to encounter' an offender at a gas station where the offender stops merely to buy gas and has no more extensive contact or interaction.

[*Ibid.* (emphasis added).]

We note in passing the incongruity of the Guidelines' reference to "reasonably certain" in its definition of "likely to encounter." That language is relied upon by M.F. but it is apparent to the Court that the Attorney General's use of that term was unfortu-

nate. The term has no support from the language of the RCNL provision concerning the scope of notification for a sex offender posing a moderate risk of re-offending. *N.J.S.A.* 2C:7–8c(2). And, it applies a much more restrictive test for determining the scope of notification than the pragmatic approach taken by this Court in *Doe, supra,* 142 *N.J.* at 29–30, 662 *A.*2d 367, when we explained the "likely to encounter" requirement and applied it to the scope of notification for Tier Two and Tier Three registrants. Normally we defer to the administrative interpretation of the agency charged with implementing a statutory program, but that deference is not due when the agency interpretation is unsupported by, and inconsistent with, the statutory language and intent. *N.J. Tpk. Auth. v. AFSCME Council 73,* 150 *N.J.* 331, 351, 696 *A.*2d 585 (1997) (noting that agency interpretation that is contrary to statutory language, or undermines legislative intent, is entitled to no deference).

The Guidelines conclude with a section on "determining scope" of notification and some examples are provided. Guidelines, *supra,* at 25–29. The Guidelines refer to the RCNL and *Doe, supra,* in their explanation:

> When it is determined that an offender falls within the TIER TWO category, then notification is to be provided to law enforcement agencies and such community organizations and educational institutions which, by reference to the definitions ..., are likely to encounter the offender. The decision as to which groups should appropriately be notified should be made on a case-by-case basis, following careful review....
>
> The intent of the notification component of the [RCNL] statute is to allow law enforcement officials to alert the public 'when necessary for the public safety.' *N.J.S.A.* 2C:7–1. Moreover the Court in *Doe v. Poritz,* in defining the scope of notification, states that 'factors other than geography may be considered if they are relevant to the offender's likely whereabouts, such as an offender's proclivity for certain locations, and geographic consideration may be affected by the nature of the offender's characteristics and the institution in question....'" 142 *N.J.* at 37, 662 *A.*2d 367. With this in mind, the scope of notification should be tailored to notifying those members of the public at risk from a particular offender who they are likely to encounter. Hence, once the tier designation has been made, the scope of notification should, within the confines of the assessment procedure and the methods of community notification set forth here and in the statute, be tailored to meet the intent of the statute and to notify those in the community who are at risk.
>
> [*Id.* at 25–27, 662 *A.*2d 367.]

In summarizing, the Guidelines declare that the "critical factor" to be considered in determining the scope of notification, in the case of a Tier Two offender, is the "geographical proximity of schools, institutions, or organizations to the offender's home or place of work...." *Id.* at 29, 662 *A.*2d 367. However, the Guidelines recognize the occasional need to limit the presumptive reach of a Tier Two scope of notification based on the facts and circumstances of an individual registrant's case. For example, the Guidelines state that if a registrant's past victims are members of the immediate family or same household, it may be determined that the offender is not a risk to community organizations or schools that otherwise would receive notification concerning a Tier Two registrant. *Id.* at 28–29, 662 *A.*2d 367. Similarly, if the registrant's past victims are all adult women and there is no documentation that the registrant has offended against young children, then when determining which community organizations to notify, elementary schools and organizations that supervise young children may be excluded. *Id.* at 29, 662 *A.*2d 367. Conversely, the Guidelines state that broadening the ordinary scope of notification for Tier Two may be warranted when factors such as the proclivities of the registrant are appropriate in order to protect the public. *Ibid.*

The tailoring suggested by the Guidelines is consistent with the evolving caselaw concerning scope of notification. In 1996, we recognized that variable factors may contribute to an adjustment of community notification for a Tier Two registrant in *In re Registrant G.B.*, 147 *N.J.* 62, 685 *A.*2d 1252 (1996). In that case, we held that in limited circumstances expert testimony may be introduced in order to establish the existence of unique aspects of a registrant's offense or character that render the registrant's scaled score and resultant tier classification and scope of notification suspect. *Id.* at 69, 685 *A.*2d 1252. G.B. had pleaded guilty to second-degree sexual assault, *N.J.S.A.* 2C:14–2b, related to multiple sexual encounters with his minor female cousin that happened over a seven-year period in the family home. *Id.* at 70, 685 *A.*2d 1252. The prosecutor's tabulation under the RRAS determined

that G.B. required a Tier Two designation and "that all schools within a two-mile radius of registrant's residence, as well as several other community organizations, would be notified of G.B.'s identity and presence." *Id.* at 71, 685 *A.*2d 1252. The Appellate Division held that G.B. should be permitted to present expert testimony concerning his unique circumstances to show that he is unlikely to re-offend, notwithstanding his actual RRAS score. *Id.* at 73, 685 *A.*2d 1252.

In reviewing that decision, this Court noted that although the RRAS is a useful guide in the evaluation of the risk of re-offense, the court must still make "a value judgment" in determining the proper tier classification and scope of community notification. *Id.* at 78, 685 *A.*2d 1252 (quoting *In re Registrant C.A.*, 146 *N.J.* 71, 109, 679 *A.*2d 1153 (1996)). We stated that "the Scale is presumptively accurate and is to be afforded substantial weight—indeed it will even have binding effect—unless and until a registrant 'presents subjective criteria that would support a court not relying on the tier classification recommended by the Scale.' " *Id.* at 81, 679 *A.*2d 1153 (quoting *In re Registrant C.A., supra,* 146 *N.J.* at 109, 679 *A.*2d 1153). In a specific case, a registrant may be able to establish that the RRAS score does not accurately reflect the risk of re-offense. *In re Registrant G.B., supra,* 147 *N.J.* at 82, 685 *A.*2d 1252. A registrant may raise a challenge to the variable factors that go into determining the RRAS score, i.e., the characteristics of the offender. *Id.* at 79, 685 *A.*2d 1252; *see In re Registrant E.A.*, 285 *N.J.Super.* 554, 561, 667 *A.*2d 1077 (App.Div. 1995) ("Variable factors recognize case-by-case circumstances that relate to the specific registrant before the court. They also relate to the individualized circumstances of a community that may be encountered in the process of affording the public with proper notice."). The Court surmised that those cases would be few and far between. *In re Registrant G.B., supra,* 147 *N.J.* at 82–84, 685 *A.*2d 1252. Noting that "the scope of notification for each tier categorization has been strictly defined by the Attorney General," the Court recognized that "in the unusual case, facts may exist that warrant a narrowing of the notification (or perhaps, even the

expansion of the notification)." *Id.* at 84, 685 *A.*2d 1252. We held that G.B. should have been permitted to present expert testimony in an effort to establish the unique circumstances of his case that were unaccounted for by the RRAS. *Id.* at 88–89, 685 *A.*2d 1252. We noted that the fact that G.B.'s offenses were committed against a member of his family or a member of the family household may be significant in determining his risk to re-offend against children in the community-at-large. *Id.* at 89, 685 *A.*2d 1252.

In *In re Registrant R.F.*, 317 *N.J.Super.* 379, 722 *A.*2d 538 (App.Div.1998), the Appellate Division determined that a registrant's unique circumstances were significant in tailoring the scope of notification to their assessment of his risk of re-offense. R.F. had two prior sexual offenses. *Id.* at 381–82, 722 *A.*2d 538. He molested his three-year-old female cousin when he was fourteen. *Id.* at 381, 722 *A.*2d 538. Later when he was twenty-three years old and living with his paramour and her ten-year old son, R.F. took control of the youngster and in multiple ways sexually assaulted him. *Id.* at 382, 722 *A.*2d 538. Classified as Tier Two, R.F. presented a psychologist at his hearing on the scope of notification. *Ibid.* The psychologist testified that there was no indication from R.F.'s previous behavior that suggested that R.F. posed a risk to the community-at-large. *Id.* at 382–83, 722 *A.*2d 538. Nonetheless, the court directed notification of his presence to twenty-five schools, agencies and community organizations in nine different municipalities. *Id.* at 381, 722 *A.*2d 538. The Appellate Division reversed, concluding that the prosecutor had not shown by clear and convincing evidence that the presumptive scope of notification for this Tier Two registrant was appropriate to his assessed risk to the community. *Id.* at 389, 391, 722 *A.*2d 538. The court reasoned:

> We do not infer from registrant's criminal history and personal circumstances that his sexual proclivities are such that the children in the care of the schools and agencies and community organizations chosen for notification are likely targets of attack by the registrant. The victims of the previous assaults were, for practical purposes, members of the his household who had been left in his care, who were

convenient and very vulnerable and whose relationship to registrant was based on trust.

[*Id.* at 390, 722 *A.*2d 538.]

In addition to the "incest exception" recognized under certain limited circumstances by the courts and in the Guidelines themselves, community notification has been tailored also to account for population density. *In re Registrant E.A., supra,* 285 *N.J.Super.* at 557–58, 667 *A.*2d 1077. The prosecutor had proposed that the scope of notification for E.A., a Tier Three registrant, be determined by distance, varying in correlation to population density of the area surrounding a registrant's residence or work place to encompass a greater distance if located in a rural area as opposed to an urban area. *Id.* at 563, 667 *A.*2d 1077. The prosecutor reasoned that the lower population densities in rural or suburban areas and lesser concentration of housing and public resources reasonably supported the conclusion that persons residing or working in such areas will likely expand their "spheres of operation." *Ibid.*

The Appellate Division upheld the prosecutor's method of determining the scope of notification, noting that the Legislature delegated to county prosecutors the responsibility for evaluating relevant factors in the community in determining the scope of notification. *Id.* at 562, 667 *A.*2d 1077. The court also emphasized the importance of the geographic factor in establishing scope of notification, and the Guidelines' implicit recognition of the significance of mobility factors. *Id.* at 561, 667 *A.*2d 1077.

■ Thus, caselaw concerning community notification has applied the "likely to encounter" standard to effect a limiting of notification from that decreed in *N.J.S.A.* 2C:7–8c for the incest-type sexual offender, and to account for population density among our various communities. As noted, the Guidelines reflect those developments.

## III.

■ Registrant urges a more particularized showing by the prosecutor before notification is given to the schools and communi-

ty organizations located within a half-mile radius of his home. He contends that the State must show that it is "reasonably certain" that he will show up at those locations and thus encounter potential victims there. In effect, he argues that there must be that specific a showing with regard to schools and similar organizations for a Tier Two offender in each and every case. In support, he cites to the Guidelines' reference that contact with the offender be "reasonably certain" as set forth in the explanation of "fair chance to encounter" the offender. The Appellate Division was persuaded by the registrant's argument. We do not agree. To accept that analysis would render meaningless the presumptive effect of the Legislature's language that decreed that once a registrant is classified as a Tier Two offender, notification shall be given to organizations in the community that are in charge of the actual care or supervision of women or children unless there are presented limiting circumstances affecting the presumptive assessment of risk of re-offense.

The "likely to encounter" analysis described by the Court in *Doe*, and as contained in the Guidelines, emphasizes the critical nature of the distance or reach of the scope of the notification for a moderate- to high-risk registrant. As recognized in *In re Registrant E.A.*, *supra*, 285 *N.J.Super.* at 563, 667 *A.*2d 1077, it refers to the distance within which "the registrant is fairly likely to have contact with members of the public." On the other hand, the "fair chance to encounter" explanation in the Guidelines, fairly read, pertains to those locations where the type of interaction that takes place provides a fair chance to encounter the registrant. A gas station patronized by a registrant is used as an example of a location that would not be one where it would be reasonably certain to encounter a registrant because of the nature of the interaction that takes place at gas stations. We approach registrant's argument, however, not from the perspective of the literal language of the Guidelines, but rather from the legislative intention as expressed in the RCNL.

██ The analysis required here must further the intent of the statute that notice be provided to those in the community who are at risk. Registrant's argument that the State must show that it is reasonably certain that he will frequent a certain school or day-care location and risk re-offense there is at odds with the clear legislative direction that community schools, agencies, and organizations that actually care for women and children be presumptive recipients of notification in order that those organizations can act to protect their charges. The Legislature is entitled to apply a presumptive test if the presumption finds support in logic or fact. *See Coffman v. Keene Corp.,* 133 *N.J.* 581, 597, 628 *A.*2d 710 (1993) (explaining that "natural" or "logical" presumption based on common experience that supports empirically demonstrated probability that presumed fact flows from underlying fact, thus, more probably than not, presumed fact is true). Unless limiting circumstances affecting the nature of a Tier Two registrant's risk of re-offense are presented, the State is entitled to give effect to the legislative preference, indeed presumption, of the need for notice to the specified schools and community organizations located in the area frequented by a registrant. That presumptive scope of notice concerning a Tier Two offender logically advances the legislative goal of public protection, specifically the protection of children and women vulnerable to a sex offender with a moderate risk of re-offending. Moreover, the presumptive scope of notification for registrant finds ample support in the RRAS assessed risk of a Tier Two registrant. The RRAS was prepared by the Attorney General, with the assistance of experts, based on studies concerning sex offender recidivism, to assess the relative likelihood of re-offense of sex offenders. The RRAS has been the subject of past scrutiny by this Court and upheld for use in assessing the risk of re-offense. See *In re Registrant J.M., supra,* and cases cited therein. It clearly supports the presumptive notification that accompanies classification of a sex offender as a Tier Two registrant at moderate risk of re-offending.

██ Thus, in the correct order of analysis a court must first identify those locations where an offender frequents. A regis-

trant's home, or place of work, are the most likely points to be so identified. Those then become epicenters for notification, the radius of notification being dependent on the urban, suburban, or rural nature of the location. The court then determines if the schools and community organizations potentially eligible for notification are within the requisite proximity. If so, those schools and organizations presumptively are appropriate recipients of notice based on the likely to encounter standard applied to the RCNL for Tier Two offenders by this Court in *Doe, supra,* 142 *N.J.* at 37, 662 *A.*2d 367. Only then do limiting circumstances receive consideration. In their absence, that is if the household/incest exception, for example, does not pertain to the registrant, and if neither the age nor gender of prior victims support placement of a limit on the presumptive notification for a Tier Two registrant, then the presumptive recipients of notification become the actual recipients entitled to notification upon entry of the appropriate order.

In conclusion, the registrant must be permitted to demonstrate that limiting circumstances pertain to his case. But the State does not have to make a particularized showing that the registrant is personally likely to show up at the location of each organization receiving notice of this Tier Two registrant. We note here that notwithstanding the otherwise valuable contributions made to this area of the law by the decision in *In re Registrant R.F., supra,* 317 *N.J.Super.* at 379, 722 *A.*2d 538, we record our disapproval of language in that opinion requiring or suggesting that the State must demonstrate that children at a particular location are targeted by a Tier Two registrant, *see id.* at 390, 722 *A.*2d 538. The Tier Two notification is presumptive for the organizations in the community responsible for care and custody of women and children, the very persons that the RCNL sought to protect through notice of the proximate presence of a Tier Two sex offender posing a moderate risk of re-offense. The presumptive effect of the RCNL is reasonably based. It proceeds from commonsense and logic. Notice to organizations in which potential victims congregate, such as schools and similar community organizations, serves a twofold purpose of allowing persons responsible for those vulner-

able to sex offenders to be aware of the sex offender's presence and to be in a position to prevent such a person from becoming involved in the sponsored activities. That presumptive notice scheme should not be undermined based on misinterpretation of language in the Guidelines. The Attorney General may wish to reexamine the language of the Guidelines, especially that portion of the Guidelines defining the phrase "likely to encounter," to eliminate any confusion concerning the presumptive nature of the Tier Two notice.

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for a rehearing to allow registrant an opportunity to demonstrate limiting circumstances in accordance with this opinion.

Chief Justice PORITZ and Justices LONG and VERNIERO did not participate.

*For reversal and remandment*—Justices STEIN, COLEMAN, LaVECCHIA, ZAZZALI and WELLS (t/a)—5.