47 A.3d 777

# IN THE MATTER OF REGISTRANT P.B.

Superior Court of New Jersey
Appellate Division

Argued May 29, 2012—Decided July 26, 2012.

Before Judges RODRÍGUEZ,[1] KESTIN, and NEWMAN.

*Joseph F. Murphy,* argued the cause for appellant, P.B.

[1] Judge Rodríguez did not participate in the telephonic oral argument. He joins the opinion, with the consent of counsel, based upon analysis of the written and oral record on appeal.

*David A. Malfitano,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*John L. Molinelli,* Bergen County Prosecutor, attorney; *Mr. Malfitano,* of counsel and on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D. (retired, temporarily assigned on recall).

Registrant, P.B., a person subject to the requirements of law governing registration of sex offenders and establishing post-release community notification standards, commonly known as "Megan's Law," *N.J.S.A.* 2C:7–1 to –23, appeals from a January 31, 2012 Law Division order finding a Registrant Risk Assessment Scale (RRAS) score of 54, in the middle range of "risk to re-offend," and mandating, among other provisions, notification of local law enforcement and "all public and private educational institutions[ ] and registered community organizations ... located within a one mile radius of registrant's home[,]" as well as placement on the Internet registry. The trial court denied regis-trant's request to stay the local notification provisions, but stayed the requirement for Internet registration pending appeal.

The order memorialized the trial court's findings, made on the record following oral argument. The written order contained the following recitations:

- the State properly tiered registrant based on the contents of the images of child pornography and victim characteristics ... [reflected in] factors 2, 3, 4, and 5 of the RRAS scale; [2]
- registrant's interpretation of the RRAS scale as it relates to tiering Internet and child pornography offenders based upon the victim characteristics of child pornography images and videos is hereby rejected[;]
- interpretation [by registrant's expert] of the RRAS scale as it relates to Internet offenders is hereby rejected[;]

_____

[2] The order contains no provision referring to criterion 6 on the RRAS, "duration of offensive behavior," notwithstanding that element informed a finding the trial court made on the record ₁nd contributed to the ultimate finding made regarding registrant's RRAS total score. The finding and conclu-sion on that element is addressed in a point raised by registrant on appeal.

• the Tier II Classification of Registrant . . . as previously determined by the State is affirmed[.]

Registrant advances the following arguments on his appeal from the trial court's disposition:

*POINT I*

THE TIERING WAS INCORRECT, INTER ALIA, FOR IT COUNTED 15 POINTS FOR ITEM 2, DEGREE OF CONTACT (PENETRATION) AND 3 POINTS FOR ITEM 6, DURATION OF BEHAVIOR (1 TO 2 YEARS).

*POINT II*

[THE TRIAL COURT JUDGE'S] RULING FURTHER EXCEEDS AND DISTORTS THE UNPUBLISHED RULING OF *IN THE MATTER OF REGISTRANT B.C.*, A–406–10–T1, DECIDED OCTOBER 7, 2010, AND VIOLATES THE PRINCIP[LES] LAID DOWN IN THE LANDMARK CASE OF *IN THE MATTER OF REGISTRANT G.B.*, 147 *N.J.* 62 [685 *A.*2d 1252] (1996).

*POINT III*

[REGISTRANT]'S RIGHT TO A FAIR TRIAL AND HIS RIGHT TO CONFRONT THE EVIDENCE AGAINST HIM WAS VIOLATED UNDER THE CONSTITUTION[S] OF NEW JERSEY AND THE UNITED STATES BECAUSE THE COURT ALLOWED ARGUMENT TO TAKE PLACE OUTSIDE THE PRESENCE OF [REGISTRANT]'S COUNSEL, WHICH ARGUMENT WAS CONSIDERED BY THE COURT AND EVEN ORDERED TO BE PLACED IN HIS FINAL ORDER AND BECAUSE THE COURT CITED AN UNPUBLISHED CASE AND ALLOWED THE STATE TO CITE AN UNPUBLISHED CASE AS AUTHORITY FOR THE COURT['] ACTION, WITHOUT PROVIDING COUNSEL WITH A COPY . . . OF [THE] CASE WHICH WAS RELIED UPON[.]

*POINT IV*

A [RIGID] APPLICATION OF THE RRAS SCALE HERE IS CONTRARY TO THE PURPOSE OF THE NOTIFICATION LAWS, IS A VIOLATION OF DUE PROCESS UNDER THE 14TH AMENDMENT TO THE UNITED [STATES] CONSTITUTION AND UNDER THE NEW JERSEY STATE CONSTITUTION, AS WELL AS A VIOLATION OF NEW JERSEY'S DOCTRINE OF FUNDAMENTAL FAIRNESS AND THE RIGHT TO EQUAL RIGHTS UNDER THE LAWS OF NEW JERSEY[.]

*POINT V*

THE APPELLATE DIVISION SHOULD DISREGARD THE STATE'S VIEW THAT THERE IS NO ROOM FOR TAKING INTO ACCOUNT THE PSYCHOLOGICAL ASSESSMENTS AND SHOULD FURTHER REJECT THE VIEW THAT THE LEGISLATURE INTENDED TO COUNT THE VICTIMS WHO ARE PORTRAYED IN CHILD PORN AS ACTUAL VICTIMS ON THE RRAS SCALE[.]

*I.*

The essential background is that, in October 2009, registrant was charged with third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4b(5)(a) and (b), after undercover police investigation efforts based on Internet communications determined that he possessed depictions of child pornography on his home computer. A judgment of conviction entered on May 23, 2011, recited that registrant, pursuant to a plea agreement, had pled guilty to a third-degree violation of *N.J.S.A.* 2C:24–4a, another section of the child endangerment statute; and that he was sentenced to 364 days in the Bergen County jail with no probation but subject to "Megan's Law and PSL [parole supervision for life]." The judgment noted that an "Avenel report dated 1/25/11 [evaluated registrant's] conduct [a]s repetitive but not compulsive[.]"

In respect of the Megan's Law feature of the matter, a notice of proposed tier hearing was served on registrant and a hearing was held on January 25, 2012, resulting in the order giving rise to this appeal. In addition to the oral arguments of counsel, several documents were before the court for consideration. Among them, the State's RRAS form reflected a total score of 72, placing registrant at the high end of the second evaluation tier, "moderate range," on the "risk to re-offend" scale. *See generally In re Registrant C.A.*, 146 *N.J.* 71, 679 *A.*2d 1153 (1996). The court also had a treatment progress report from Dennis Radabaugh, LCSW, who was administering "sex offender specific treatment" to registrant; a psychological report from Dr. Philip H. Witt, prepared at the request of registrant's attorney; and an evaluation report from Dr. Mark Frank of the Adult Diagnostic and Treatment Center (Avenel).

As the proceeding opened, the judge noted that he had already heard the State's arguments on a similar application in "the last case[,]" which the prosecutor described as "virtually identical with respect to the legal arguments." The judge then invited registrant's attorney to offer his arguments.

Following registrant's arguments that the RRAS "was not created for this type of case," and that a situation involving the viewing of photographs in which there had been no contact with the victims, "is actually outside of the heartland of the [RRAS,]" *see generally In re Registrant G.B.*, 147 *N.J.* 62, 79–85, 685 *A.*2d 1252 (1996), the court referred to "the *B.C.* case," decided by the Law Division in an unpublished opinion and affirmed by this court, also in an unpublished opinion, both in 2010. The courts on both levels in that case had held that Megan's Law standards applied to child pornography, and they rejected the argument that mere possession and viewing of child pornography were, categorically, "outside the heartland" of Megan's Law requirements. The judge in this matter disposed of registrant's argument to that effect by stating that, although "[t]his needs to be addressed by the Appellate Division again," he agreed with the reasoning and dispositions in *B.C.*

■ Turning to the actual tiering question, the judge, the prosecutor and defense counsel engaged in a three-way colloquy regarding RRAS items 4, 5, and 6. As respects the last of these three criteria, "duration of offensive behavior", the prosecutor stated:

> [T]here is nothing which expressly states the length of time that the individual registrant was viewing or downloading child pornography, though, I think based on the volume, ... the prosecutor on this case conveyed to me that this was the largest seizure of child pornography. There's numerous references of being vast, extreme, gigantic quantity of child pornography. Unless this individual is going to proffer that he is sitting on his computer downloading hundreds of files on a daily basis, there were literally tens of thousands of megabytes worth of pictures and videos seized on his computer.
>
> I think there is a reasonable inference, by clear and convincing evidence,[3] that the volume is most certainly likely over two years[.]

---

[3] "All judicial determinations regarding tier classification and scope of notification, whether in a contested or default proceeding, must be by clear and convincing evidence." *G.H. v. Township of Galloway*, 401 *N.J.Super.* 392, 403, 951 *A.*2d 221 (App.Div.2008) (citing *E.B. v. Verniero*, 119 *F.*3d 1077, [1110–]1111 (3d Cir.1997), *cert. denied, sub nom. Verniero v. W.P.*, 522 *U.S.* 1110, 118 *S.Ct.* 1039, 140 *L.Ed.*2d 105 (1998)), *aff'd o.b.*, 199 *N.J.* 135, 971 *A.*2d 401 (2009).

Counsel for registrant responded that there was no clear and convincing evidence before the court on the question of duration. "[A]nd just by volume, doesn't do anything because those programs .... [y]ou could sweep up that amount in one or two sessions .... with the size of those programs." The prosecutor replied: "I just think there is a reasonable inference there." The court ruled that the "clear and convincing" evidence standard did not permit resolution of the issue by inference alone. "[T]he possibility exists it wouldn't go over two years. So, I'm going to score him at moderate risk for that category[.]"

The judge noted that the total RRAS score in the "offense history" subset would be 24 instead of the 36 assigned by the State. He reiterated that the total score on the "seriousness of offense" subset would be the 30 points assigned by the State because "I don't think it makes a difference" that there was no showing that the photographs depicted acts of penetration "of actual people versus ... simulations or [other modes]." The judge concluded, regarding the "characteristics of offender" subset, with a finding that registrant was in the "low risk" category in respect of "response to treatment," rather than in the "high risk" category proposed by the State. The judge summarized his findings with regard to all subsets and criteria. "[Registrant's] total score[,] then[,] based on the modifications are 30[ ] for Seriousness of Offense[;] 24 for Offense History. That's a 54. Puts him in where he was before, Tier II, except [registrant] is somewhere more square in the middle."

## II.

### A

■ We reject the notion that the RRAS "high risk" standard of "penetration" in criterion 2, "degree of contact," is satisfied by a showing that a registrant merely possessed depictions of penetrative sexual activity with children, without any concomitant indication that he played a role in the penetrative activity either as

a participant or a producer. Because we are here concerned with the special evils that arise from child pornography, *see United States v. Meiners,* 485 *F.*3d 1211, 1213 (9th Cir.2007), and from baneful uses of computer technology in that connection, *see, e.g., In re Registrant J.W.,* 410 *N.J.Super.* 125, 140–41, 980 *A.*2d 7 (App.Div.2009), we do not base our determination on constitutional principles of personal or domestic privacy that invalidate convictions for "mere private possession of obscene matter[.]" *See Stanley v. Georgia,* 394 *U.S.* 557, 559, 565–66, 567–68, 89 *S.Ct.* 1243, 1245, 1248–49, 1249–50, 22 *L.Ed.*2d 542, 546, 549–50, 551 (1969); *Mapp v. Ohio,* 367 *U.S.* 643, 686, 81 *S.Ct.* 1684, 1708, 6 *L.Ed.*2d 1081, 1108, 84 *A.L.R.*2d 933 (1961) (Stewart, J., concurring). Rather, it seems evident from *N.J.S.A.* 2C:7–1 to –23 and authoritative interpretive materials developed to implement the legislation that, under the very terms of Megan's Law alone, the accused must have engaged in some kind of participation in penetrative activity before he or she can be deemed to be responsible for it on any level. *See, e.g., In re Registrant J.G.,* 169 *N.J.* 304, 330–31, 777 *A.*2d 891 (2001) (requiring penetration to be proven by clear and convincing evidence).

To be sure, a market for such materials is essential in order to support their production and distribution, *see Meiners, supra,* 485 *F.*3d at 1213; *J.W., supra,* 410 *N.J.Super.* at 140, 980 *A.*2d 7, but the simple act of possessing them, with nothing further, may not be considered as having the same heinous qualities as generating or producing them. *See State v. Sisler,* 177 *N.J.* 199, 208, 827 *A.*2d 274 (2003) ("Although the person who possesses child pornography helps to foster a pernicious industry, his or her offense is less severe than the person who creates an image that then can be sold, distributed, circulated, or simply viewed.... That lawmakers would consider less culpable [than those who create, distribute, or sell child pornography] the simple possessor, namely, the person who views or prints a computer image for his or her sole use, appears ... rational.").

In a related vein, in response to criticism by federal judges [4] frustrated that following the advisory United States Sentencing Commission (USSC) Guidelines "often result[s] in *higher* sentences for child pornography than for actually attempting to abuse a child," a practitioners advisory group of the USSC, in comments for a February 15, 2012 USSC hearing on federal child pornography offenses, observed that:

> The enhancements that relate to the images possessed—both the nature or type of images and their volume—punish typical offenders as though they committed aggravated child pornography offenses, when in fact their offenses reflect no truly aggravating conduct. In 2010, two-thirds of child pornography offenders had their sentences raised by five offense levels for number of images alone. Given the online climate of file sharing programs such as Gigatribe, offenders often receive far more images than they requested or intended to receive. Other programs such as peer-to-peer networks offer unlimited access to another user's files. Many offenders end up with large amounts of material that they never actually view and did not want. Forensic review of our clients' computers frequently shows child pornography files that were never opened, or that were opened, quickly reviewed and deleted. The guidelines' focus on number of images thus mistakes quantity for culpability and fails to recognize real differences in the viewing habits and intent of individual defendants.
>
> [Letter from Practitioners Advisory Group to Hon. Patti B. Saris, Chair, United States Sentencing Commission, at 3–4 n. 6 (February 13, 2012), http://www.ussc. gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120215–16/ Testimony_15_PAG.pdf (last visited June 27, 2012) (footnotes omitted).]

Based on the reasoning expressed in *J.G., Sisler*, and the Practitioners Group comment, we regard the trial court's allocation, in this matter, of 15 points for "penetration" to have been unwarranted.

## B

■ The trial court's determination regarding criterion 6, "duration of offensive behavior," must also be reversed because it had no basis in evidence that would satisfy the required "clear and convincing" standard. *See In re Registrant M.F.,* 169 *N.J.* 45, 54, 776 *A.*2d 780 (2001); *J.W., supra,* 410 *N.J.Super.* at 130, 136, 980 *A.*2d 7. The court disallowed the State's argument for a "high

---

[4] *See, e.g., United States v. Grober,* 595 *F.Supp.*2d 382 (D.N.J.2008).

risk" finding in this regard with a 9–point rating, and concluded, without evidentiary support, that, instead, a "moderate risk" finding with a 3–point rating was appropriate. Apart from the quantity of the material, there was no evidence at all before the court regarding the duration of the offensive behavior, *i.e.,* for how long a period registrant had possessed any of the material. All the court had was the surmise of the prosecutor based upon the quantity of material. No proofs, via expert witnesses or otherwise, were proffered to establish the length of time the material may have been on registrant's computer, or how much time would have been required to compile the quantity discovered. Without some such evidence, there was no basis for any finding at all in this category. The only finding permitted by the evidence, therefore, was zero points because the State had failed to produce clear and convincing evidence supporting any finding at all regarding criterion 6, "duration of offensive behavior."

## C

The 15 points found for "penetration" and the 3 points found as a result of the court's "splitting-the-difference" determination regarding "duration," together, total 18 points. Elimination of these 18 points reduces registrant's RRAS score from the 54–point total found by the court to 36 points, resulting in registrant being placed in the "low range" of RRAS scoring, albeit at the highest end of that category.

The RRAS is designed to assess the risk of re-offense by one who has committed the crimes enumerated in *N.J.S.A.* 2C:7–2b. Under the statute, *N.J.S.A.* 2C:7–8c, understood with the guidance provided by the authoritative *Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws,* http://www.nj.gov/oag/dcj/megan/meganguidelines–2–07.pdf (last visited June 26, 2012), required by *N.J.S.A.* 2C:7–8d, "if the risk of re-offense is low, law enforcement agencies likely to encounter the person registered shall be notified" of the registrant's presence in the

community. *N.J.S.A.* 2C:7–8c(1). Higher levels of risk assessment involve more sweeping community notification, including Internet registry. *See N.J.S.A.* 2C:7–8c(2),(3), –12, –13. There is no provision for concluding "that any registrant could be classified as posing *no* risk of reoffense." *Doe v. Poritz,* 142 *N.J.* 1, 22, 662 *A.*2d 367 (1995).

Accordingly, having reversed the trial court's findings on two of the RRAS criteria, resulting in registrant's movement from the second tier, moderate range of "risk to re-offend," to the first tier, low range, we remand to the trial court for a determination of the registration and notification regime that ought to apply in this matter.

## III.

Several other aspects of the trial proceeding, as challenged by registrant, call for comment in the cause of good judicial administration, notwithstanding they are not essential in reaching our conclusions on the questions squarely presented.

## A

In the context of what is before us, we would be remiss if we omitted to emphasize the prohibition of *Rule* 1:36–3 that "no unpublished opinion shall be cited by any court." This norm applies even in so specialized a subject matter as this, along with the concomitant prohibition precluding any party from citing an unpublished opinion "to any court" without first providing a copy to the adversary along with "all contrary unpublished opinions known to counsel." *Ibid.*

## B

In addition to the trial court's reliance on unpublished opinions, registrant identifies another flaw in the trial court's approach to this matter. The verbatim record opens with the following exchange after counsel entered their appearances:

THE COURT: Go ahead. Is this a similar application to the last case?

[THE PROSECUTOR]: Identical. It's virtually identical with respect to the legal arguments.

THE COURT: Well, I already heard your argument, let me hear from [registrant's counsel].

Whereupon, registrant's counsel proceeded to articulate his argument to the trial court.

Attached to his argument on appeal regarding the State's and the trial court's reliance on unpublished opinions, registrant also contends:

During oral argument the Judge revealed that he had already heard argument on the issue before it from the prosecutor ..., but the real unfairness is that the Judge may have heard it, but [registrant's] counsel did not and thus this argument was heard outside of the case and the record. This is a denial of [registrant's] right to a fair trial and his right to confront the evidence and the case against him, not to mention his Sixth Amendment right to counsel under the United States Constitution as well as Article I, section 10 of the New Jersey Constitution.

[Quoting from *In re Oliver*, 333 *U.S.* 257, 273, 68 *S.Ct.* 499, 508, 92 *L.Ed.* 682, 694 (1948).]

Of course this right to have counsel is not worth much if one's attorney has not heard the argument of the other side.

This apt criticism of a court relying upon an argument made in a different case implicates another problem apart from its distortion of the effectiveness of counsel: when an appeal is taken, the record on appeal lacks the argument propounded that may have influenced the trial court's decision. Unless the trial court, in its disposition, is careful to articulate, in detail, the argument that was made, the record is entirely wanting in this essential element. *See Outline of Procedures for Megan's Law Cases* (Rev. Mar. 31, 2009), http://www.judiciary.state.nj.us/notices/2009/n090413a.pdf (last visited June 26, 2012). The latter source, promulgated by the Supreme Court, directs the trial judge conducting a hearing to render a final determination which "shall contain express findings of fact based on the standard of clear and convincing evidence that support the judge's conclusion that the State has or has not met its burden of persuasion both as to tier classification [and] scope of notification," as well as Internet registry. *Id.* at 12. Thus, where the State does not offer its arguments and proofs at the hearing

on the very matter, or the court does not set them out in detail, the record will be bereft of illumination on these issues.

An appellate court cannot properly evaluate the matter on appeal without this material. *See* Pressler & Verniero, *Current N.J. Court Rules,* comment 1 on *R.* 2:5–4 (2012) ("It is, of course, clear that in their review the appellate courts will not ordinarily consider evidentiary material which is not in the record below by way of adduced proof, judicially noticeable facts, stipulation, admission or a recorded proffer of excluded evidence."). It behooves a trial court to be certain that the record being produced before it in each case reflects, at length, all significant elements of the proofs and arguments made. This is for the benefit of an appellate court as well as those involved in the trial proceeding.

### C

This matter presents a third topic that we need not address in order to dispose of the issues before us, but which merits attention. Registrant here contends that, as the Bergen County Prosecutor administers the second numbered RRAS criterion, "degree of contact," all computer depictions of penetrative activity are treated as "penetration," placing mere possession of such matter, with nothing more, in the "high risk" category. Registrant asserts that other county prosecutors have different perceptions and practices in this regard. The result, registrant contends, is that the bottom-line evaluation of any registrant depends more upon where he resides than upon the qualities of his conduct or record, a recipe for arbitrariness and caprice.

Although the State responds to this argument by categorizing it as speculative, to the extent registrant is even partially accurate in his portrayal of different standards governing the administration of Megan's Law from county to county, we are constrained to note the Legislature's expressed disapproval of disparity in respect of basic matters in this subject matter area. *See N.J.S.A.* 2C:7–20. Clearly, the *Attorney General Guidelines* are intended to eliminate or minimize any basic differences in evaluation and classifica-

tion, but that document is not the only mechanism for promoting "more uniform and equitable" application of Megan's Law, the desideratum established by the Legislature in *N.J.S.A.* 2C:7–20. Although a remedy for all instances of disparity may be elusive, the goal must constantly be sought by the several county prosecutors, in whose offices first-line administration of the subject matter area is reposed.

## IV.

For the reasons expressed in part II of this opinion, the matter is remanded for modification of the order's findings in accordance with our ruling classifying registrant in the "low range" of "risk to re-offend"; and for the application of appropriate registration and notification standards to him.