# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0283-21

IN THE MATTER OF
REGISTRANT F.R.

_____

Argued September 19, 2022 – Decided September 26, 2022

Before Judges Mawla, Smith and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. ML 05090062.

Fletcher C. Duddy, Deputy Public Defender, argued the cause for appellant F.R. (Joseph E. Krakora, Public Defender, attorney; Stephanie A. Lutz, Assistant Deputy Public Defender, of counsel and on the briefs).

Stephanie Davis Elson, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Esther Suarez, Hudson County Prosecutor, attorney; Taylor Ruggieri, Assistant Prosecutor, on the brief).

PER CURIAM

Appellant F.R. appeals from an August 20, 2021 order denying his motion to terminate Megan's Law registration, N.J.S.A. 2C:7-1 to -23, and parole supervision for life (PSL), N.J.S.A. 2C:43-6.4(c). We affirm.

In 2005, F.R. pled guilty to one count of endangering the welfare of a child, N.J.S.A. 2C:24-4(a), was sentenced to Megan's Law obligations under N.J.S.A. 2C:7-2(f), PSL, and ordered to have no contact with the victim. The underlying offense occurred in 2004 and involved sexual intercourse between F.R., who was then nineteen years of age, and the victim who was eleven.

F.R. violated parole four times. In 2007, his parole officer discovered a private Myspace account and a Yahoo! account. The Parole Board concluded F.R. had listed his account as private to hide it from his parole officer and F.R.'s testimony to the contrary lacked credibility. In 2011, F.R. admitted using the internet daily for dating websites and logging onto his wife's Facebook account to meet women. In 2018, he admitted to his parole officer that he was using social media, including Facebook, Instagram, Twitter, and Snapchat. Although he claimed he did not own a smartphone, one was found hidden in his closet. When the smartphone was accessed, it revealed he had been using alcohol and operating an unauthorized side business. The parole officer found a PlayStation and several pornographic DVDs, among them some bearing "teen" in the title. In 2020, F.R. violated parole by staying with his aunt without his parole officer's permission.

2

During this time, F.R. had several psychological evaluations. A 2004 evaluation concluded he had mild intellectual disability and required close supervision and ongoing mental health services. The 2007 evaluation concluded he had a low risk of reconviction. A 2011 evaluation diagnosed him with adjustment disorder, PTSD, substance abuse, and depressive disorder. The May 2020 evaluation concluded F.R. had a low risk for sexual recidivism. A November 2020 evaluation concluded F.R.'s repeated violations "do not appear to be the result of purposeful manipulation or opposition to the PSL stipulations." Rather, the evaluator found F.R.'s low intellectual functioning contributed to the violations and use of social media. The evaluation further concluded he was a low risk for sexual recidivism.

In January 2021, F.R. moved to terminate his Megan's Law and PSL obligations. At the time, he had a score of thirty-four points on the Megan's Law Risk Assessment Score, classifying him as Tier 1, with no internet access.

Judge John A. Young, Jr. issued a written decision denying F.R.'s motion. He concluded F.R. had not committed any crimes, disorderly or petty disorderly offenses for over fifteen years, noting F.R.'s criminal record since his Megan's Law conviction "consists only of parole violations and a sanctioning by the parole board, which are not considered . . . 'offenses' as contemplated by the

Megan's Law statute under N.J.S.A. 2C:7-2(f)." However, the judge found F.R. failed "to establish by a preponderance of the evidence that he is not likely to recidivate and pose a threat to the safety of others." The judge stated:

> While not criminal acts themselves, [F.R.'s] repeated parole violations tell a tale of either a total disregard for the rules of his parole or a complete lack of understanding. The [c]ourt is inclined to believe that [F.R.] does understand the terms of his parole but chooses to ignore them, nevertheless. This is evidenced by setting his social media profile to "private" in 2008 in an attempt to conceal it, hiding his smartphone, Play[]Station 3, pornography, and an alcohol habit he was admittedly "struggling" with from parole, and again in 2020, not seeking permission from parole to stay with his [a]unt. On each occasion, [F.R.] presents various excuses for why he violated his parole. In 2008[,] he claimed he did not know he could not have social media, yet only created more social media accounts in 2011 and 2018. In 2011[,] he stated he feared his wife and that's why he needed to use Facebook to meet other women. In 2018, he told [p]arole he did not own a smartphone, when he was in fact hiding it in the closet, and again in 2020, he misstated why he was on an ankle monitor.
>
> This pattern of inconsistency and unreliability continues with [F.R.'s] statements to police and interviews with doctors during his psychological analyses.

The judge reviewed the psychological evaluations in the record, and noted the latest evaluation, which found F.R. was a low risk to recidivate, was flawed because of the twenty factors used to assess F.R., the evaluator failed to assess

4

the factor regarding his past supervisory failures, which "is critical for assessing

. . . [F.R.] who appears to have had little to no regard for the terms of his parole

over the last nearly two decades."  The judge concluded as follows:

> Therefore, considering [F.R.'s] continual parole violations and attempts to conceal these violations, admitted alcohol and substance abuse issues, the discovery of pornography in [F.R.'s] home, contradictory statements as to [v]ictim's age and whether he or she was the aggressor, and multiple diagnoses of mental deficiencies and a child-age mental age, this [c]ourt is not satisfied by the preponderance of the evidence that [F.R.] is not likely to commit another offense.

Judge Young reached a similar conclusion regarding F.R.'s request to be

released from PSL.  He found F.R. met the first prong under N.J.S.A. 2C:43-6.4

because he did not commit a crime for fifteen years following his release from

incarceration but failed to present "'clear and convincing' evidence . . . he does

not pose a threat to the community[]" for the same reasons expressed in the

judge's Megan's Law analysis.

F.R. raises the following point on appeal:

> POINT I:  F.R. PROVED BY CLEAR AND CONVINCING EVIDENCE THAT HE IS "NOT LIKELY TO POSE A THREAT TO THE SAFETY OF OTHERS"; THE COURT'S DENIAL OF F.R.'S MOTION DOES NOT ACCOUNT FOR THE APPELLATE DIVISION'S DECISION IN STATE V. R.K., 463 N.J. SUPER. 386 (APP. DIV. 2020), AND IS

5

BASED ON CLEARLY ERRONEOUS INTERPRETATIONS OF THE FACTS.

> A. Under . . . R.K., F.R.'s use of social networking should never have been prohibited; further, his use of social networking does not make him a threat to the public.
>
> B. F.R.'s statements concerning the victim's age, the victim's coercive behavior, and his 2020 parole sanction do not make him a threat to the community.
>
> C. F.R.'s intellectual disabilities do not make him a threat to the safety of others.

We review a trial court's decision on a motion to terminate obligations under PSL or Megan's Law for an abuse of discretion. In re J.W., 410 N.J. Super. 125, 130 (App. Div. 2009). An abuse of discretion occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "[W]hen the trial court renders a decision based upon a misconception of the law, that decision is not entitled to any particular deference and consequently will be reviewed de novo." State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017).

A registrant may apply to terminate the obligations under Megan's Law "upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility . . . and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). "Relief from Megan's Law registration may be granted upon proof by a preponderance of the evidence that a person is not likely to pose a threat to the safety of others." In re J.M., 440 N.J. Super. 107, 116 (Law. Div. 2014).

Similarly, a defendant may be relieved from PSL where "the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision." N.J.S.A. 2C:43-6.4(c). "However, a person requesting termination from CSL/PSL obligations must demonstrate the same evidence by satisfying the court by the higher burden of 'clear and convincing evidence.'" In re J.M., 440 N.J. Super. at 116.

Having considered F.R.'s arguments pursuant to these principles, we affirm substantially for the reasons expressed in Judge Young's opinion. We add the following comments.

A-0283-21

F.R.'s assertion the judge failed to consider our ruling in R.K. is unsupported by the record. In R.K., we held imposing a blanket social networking restriction on a defendant's CSL sentence violated his constitutional rights to free speech because his sexual offense convictions were unrelated to the use of social media or the internet. 463 N.J. Super. at 392-93. We stated: "We continue to stress that the Board's regulations must avoid blanket bans on such valued rights. Supervised release conditions must be specifically designed to address the goals of recidivism, rehabilitation, and public safety, which are specifically tied to the individual parolee's underlying offenses." Id. at 417-18. As a result, we remanded R.K.'s sentence for reconsideration and noted "we do not preclude the trial court, or the Board, from imposing less restrictive conditions on R.K.'s [i]nternet access that comport with . . . our federal and state constitutions." Id. at 418.

Here, the judge's opinion acknowledged that "[o]n January 29, 2020, the New Jersey State Parole Board suspended the enforcement and imposition of the [g]eneral [c]ondition prohibiting [s]ocial [n]etworking, with some conditions if social media access contributed to the commitment of an offense or where deemed appropriate based on [a r]egistrant's behaviors." Therefore, even though

the judge's opinion did not mention <u>R.K.</u>, he was clearly aware of the changes in the ability to impose a blanket internet ban on registrants.

More importantly, the decision here does not turn on the social media restrictions imposed on F.R., but rather a litany of conduct, which included deceptive behavior, alcohol abuse, possession of "teen" pornography, contradictory statements about his underlying offense, and ongoing mental health deficits.  Therefore, F.R.'s assertion the judge misconstrued the law and focused on the social media ban is unsupported by the record.

We discern no abuse of discretion in the judge's factual findings.  Indeed, his conclusion that F.R.'s inconsistent statements about the underlying offense undermined F.R.'s argument he would not recidivate was a reasonable conclusion to draw because it showed F.R. lacked the capacity to be truthful.

Finally, the judge did not ignore the psychological evaluation, which opined F.R. was at low risk to recidivate.  A trial judge may accept or reject an expert report and weigh it appropriately.  <u>Maison v. N.J. Transit Corp.</u>, 460 N.J. Super. 222, 232 (App. Div. 2019); <u>see also</u> <u>State v. S.N.</u>, 231 N.J. 497, 514-15 (2018) ("[R]egardless of whether the evidence is live testimony, a videotaped statement, or documentary evidence, deference is owed to the trial court's

A-0283-21

determinations of fact and credibility." (citing State v. S.S., 229 N.J. 360, 379 (2017))).

As we noted, Judge Young questioned the veracity of the psychological evaluation because it omitted a critical factor. This finding was well within his factfinding powers and did not constitute an abuse of discretion. Moreover, his finding that defendant would recidivate was based on more than the evaluation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION